UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**CURTIS RAY WEAMS, JR.**          **CIVIL ACTION**

**VERSUS**

**FCA US L.LC.**                   **NO. 3:17-cv-4**

## COMPLAINT FOR DAMAGES

**COMES NOW THE PLAINTIFF**, Curtis Ray Weams, Jr. (hereinafter "Plaintiff"), by and through the undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, and files this Complaint for Damages against the above-named Defendant, FCA US L.L.C. (hereinafter referred to as "Defendant"), showing the Court as follows:

### NATURE OF THE ACTION

1. This is a civil action arising out of serious, permanent injuries and losses sustained by Plaintiff in Ascension Parish, Louisiana on or about January 16, 2016, following the unexpected spontaneous deployment of a driver's side air bag in a 2004 Jeep Liberty vehicle owned by Plaintiff.

2. Plaintiff brings this automotive, product liability and personal injury action for the injuries he sustained, including but not limited to pain, suffering, permanent disfigurement, scarring, loss of enjoyment of life, medical expenses (past and future), loss of income (past and future), loss of use of his vehicle, property damage, diminished value of his vehicle and all other damages reasonably associated with is injuries.

3. This action is brought pursuant to the Louisiana Product Liability Act and any other applicable law.

## PARTIES

4. At all times relevant hereto, Plaintiff is and was a citizen and resident of Ascension Parish, State of Louisiana and the lawful purchaser, owner and user of a certain 2004 Jeep Liberty, VIN No. 1J4GK58K94W208774 (hereinafter referred to as the "Vehicle") at issue in this Complaint.

5. Upon information and belief, the "Vehicle" was originally designed and manufactured by DaimlerChrysler Motors Company LLC, with its U.S. operations generally called "DCX". The "Vehicle" was created, marketed and sold under the "DCX" era of the corporation.

6. On May 14, 2007, DaimlerChrysler announced the sale of 80.1% of Chrysler Group to American private equity firm Cerberus Capital Management, L.P., thereafter known as Chrysler LLC, ("Old Chrysler) although Daimler (renamed as Daimler AG) continued to hold a 19.9% stake.

7. Chrysler Group L.L.C. ("New Chrysler") was incorporated on April 28, 2009 in relation to the bankruptcy of the now defunct Chrysler L.L.C. ("Old Chrysler"). "New Chrysler" was created to purchase certain assets of "Old Chrysler" and "New Chrysler" assumed "Old Chrysler's" liabilities.

8. The US Treasury, through the Troubled Asset Relief Program, invested $12.5 billion in Chrysler and recovered $11.2 billion when the company shares were sold in May 2011, resulting in a $1.3 billion loss. On July 21, 2011, Fiat bought the Chrysler shares held by the United States Treasury.

9. On January 1, 2014, Fiat announced it would be acquiring the remaining shares of Chrysler owned by the VEBA (Voluntary Employee Beneficiary Association) worth $3.65 billion. The deal

2

was completed on January 21, 2014. Several days later, Fiat and Chrysler were reorganized under a new holding company, Fiat Chrysler Automobiles (FCA).

10.     Fiat Chrysler Automobiles, also known as FCA, is an Italian-controlled multinational corporation. The group was established in late 2014 by merging Fiat S.p.A. into a new holding company, Fiat Chrysler Automobiles N.V., which is incorporated in the Netherlands (with headquarters in London) for tax purposes. FCA's mass-market brands operates through two main subsidiaries: FCA Italy (previously Fiat Group Automobiles) and FCA US (previously Chrysler L.L.C.).

11.     On 16 December 2014, Chrysler Group L.L.C. announced a name change to FCA US L.L.C.

12.     FCA US L.L.C. is a North American automaker, headquartered in Auburn Hills, Michigan. FCA US is a member of the Fiat Chrysler Automobiles N.V. (FCA) family of companies.

13.     Through these series of complicated corporate mergers, U.S. Governmental "bail out" and at least one bankruptcy proceeding, it is believed that Defendant FCA US L.L.C. is the current "manufacturer" of the "Vehicle" for purposes of this Complaint.

14.     In light of the difficulty in accurately determining the true relationship between multiple international companies, particularly given the complicated nature of multiple sales, stock and share transfer transactions, mergers, acquisitions and name changes, Plaintiff names FCA US L.L.C. a defendant herein in the good faith belief that it is liable for the defective product identified herein.

**JURISIDICTION AND VENUE**

15. Jurisdiction is proper in this Court because the action has been filed in the judicial district in which the Plaintiff resides and the incident at issue occurred.

16. This Honorable Court has diversity jurisdiction over this action pursuant to 28 U.S.C. §1332.

17. This Honorable Court has personal jurisdiction over the Defendant because it conducts substantial business in this District such that Defendant can reasonably expect to litigate issues relative to its product liability within this District.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because the Defendant, as a corporate entity, is deemed to reside in any judicial district in which it is subject to personal jurisdiction. Additionally, the Defendant transactions business, markets, sells, repairs and distributes its product within this District.

## THE INCIDENT

19. On January 16, 2016, Curtis Ray Weams, Jr. opened the door of the Vehicle, reached inside, inserted the key into the ignition and turned the key. Upon turning the key to the "Start" position, the driver's side air bag spontaneously deployed.

20. The seatbelt pretensioners did not deploy or activate.

21. The Vehicle's transmission was in "Park" and the vehicle was stationary at all times relevant hereto.

22. Plaintiff did not contribute to or mechanically "provoke" the air bag to deploy in any manner.

23. The air bag struck Plaintiff in the face, head, neck, chest, shoulders and arms.

24. Plaintiff momentarily lost consciousness as a result of the impact.

25. Plaintiff suffered lacerations, abrasions and contusions as a result of the air bag's impact upon his body.

26. Plaintiff suffered head, neck and low back injuries as a result of the impact and torsion applied to his body as a result of the air bag's deployment.

27. Plaintiff has undergone significant medical treatment, including surgery, as a result of the incident.

28. Plaintiff continues to require medical treatment as a result of the injuries caused by the incident.

## DAMAGES

29. As a direct and proximate cause of the incident, Plaintiff has incurred substantial medical expenses, lost wages, loss of earning capacity, loss of enjoyment of life, pain, suffering, disfigurement, scarring, disability, all of which are expected to continue into the future.

30. Plaintiff is entitled to recover damages for loss of use of the Vehicle, return of purchase price, repair of vehicle, diminished value, "stigma" damages, and redhibition "bad faith" damages.

## DEFENDANT'S LIABILITY

31. There are no circumstances under which the Vehicle's air bag should spontaneously deploy.

32. Air bags are designed to protect the occupants of a vehicle during a crash and/or roll-over event, and should never deploy absent specific triggering events, none of which were present at the time of the Incident.

33. The Vehicle's air bag system was negligently designed and manufactured.

34. The Defendant and its predecessors were aware that its air bags in similar vehicles were defective and unreasonably dangerous.

35. The Defendant previously issued multiple recall notices relating to the 2003 model Jeep Liberty due to spontaneous air bag deployment.

36. The National Highway Safety Administration (hereinafter "NHTSA") instituted Jeep Liberty recall Campaign Number 12V527000 due to "Inadvertent Air Bag Deployment" on or about November 8, 2012. This "First Recall" recalled 2002 and 2003 Jeep Liberty vehicles manufactured January 9, 2001 through March 28, 2001. Defendant described the defect as "a component in the air bag control module may fail causing the front air bags, side curtain air bags, and/or seatbelt pretensioners to deploy inadvertently while the vehicle is being operated."

37. The Defendant agreed to "install a supplemental jumper harness to the air bag control module, free of charge" to address the air bag deployment defect.

38. On January 28, 2015, NHTSA instituted Jeep Liberty Recall Campaign Number 15V04600 ("Second Recall") to address continued inadvertent air bag deployment in Jeep Liberty vehicles manufactured January 9, 2001 to May 23, 2003. The defect was reported by Chrysler to be "Due to electrical noise beyond the tolerance of the air bag electronic control module (ECM), a component in the ECM may fail, causing the front air bags, side air bags, and/or seatbelt pretensioners to deploy inadvertently while the vehicle is being operated."

39. Defendant did not release information identifying the specific "component in the ECM" that may fail, causing inadvertent air bag deployment. Defendant agreed to replace the air bag electronic control module and the side impact sensors, as necessary, free of charge. This recall began on December 29, 2015.

40. Defendant did not release information as to why the recall was limited to vehicles manufactured January 9, 2001 to May 23, 2003.

41. On October 19, 2015, NHTSA instituted Jeep Recall Campaign Number 15V673000 ("Third Recall") to address continued inadvertent air bag deployment in Jeep Liberty vehicles manufactured May 27, 2003 to May 20, 2004. The defect was reported by Chrysler to be "Due to electrical noise beyond the tolerance of the air bag electronic control module (ECM), a component in the ECM may fail, causing the front air bags, side air bags, and/or seatbelt pretensioners to deploy inadvertently while the vehicle is being operated."

42. The Third Recall appears to have expanded the Second Recall to include a larger population of Jeep Liberty vehicles. This recall began on May 5, 2016.

43. Upon information and belief, Defendant has not publicly identified the specific defect that prompted the First, Second or Third Recall of Jeep Liberty air bag components.

44. Upon information and belief, Defendant is unaware of the specific defect that caused inadvertent air bag deployment in Jeep Liberty vehicles.

45. The Vehicle at issue in this matter is a 2004 Jeep Liberty, not subject to any previous recall.

46. Notwithstanding the Vehicle's absence from prior recalls, the Incident occurred in the exact same manner in the Vehicle as is described in vehicles subject to the prior three Jeep Liberty recall campaigns.

47. Upon information and belief, the Vehicle's air bag system, including but not limited to its ECM, was defective in its design and/or manufacture because it spontaneously deployed.

48. The ECM in the Vehicle had never been serviced, altered, modified or in any other respect disturbed such that it should not or would not have functioned as intended by Defendant at the time of its manufacture and/or sale of the vehicle. Therefore, Plaintiff is entitled to the presumption that the principles of *res ipsa loquitor* apply under the circumstances of this specific and unique Incident.

7

49. Plaintiff is free of fault in causing or contributing to the Incident.

50. Upon information and belief, Defendant knew or should have known that the Vehicle was subject to spontaneous air bag deployment, yet failed to warn Plaintiff of the defect.

51. Defendant by and through the sale of the product described above expressly and impliedly warranted to the public generally, and to the Plaintiff specifically, that the Vehicle was fit for the purposes for which it was intended. Plaintiff relied on said express and implied warranties.

52. The Vehicle's air bag system was and continues to be subject to an express and implied warranty of fitness, such that Defendant is liable to Plaintiff for damages resulting from the failure of the air bag system to operate as reasonably expected.

53. Contrary to the warranties, the Vehicle was not fit for its intended uses, rendering the product in question unreasonably dangerous.

54. The aforementioned injuries were caused by a combination of product defects in the Vehicle which was defective in design, construction, composition, inadequate instructions and/or warnings of the inherent dangerous characteristics of the Vehicle and failing to adhere to its express and implied warranties of fitness, rendering said product unreasonably dangerous pursuant to the Louisiana Products Liability Act, LSA-R.S. 9:2800.51, *et seq.*, the absence of one or more of which defective conditions would have, more probably than not, prevented the injuries which resulted herein. Said defective conditions consisted of or resulted from the following non-exclusive list of acts and/or omission attributable to Defendant as manufacturer of the Vehicle:

   a) In failing to warn users that the air bag was susceptible to spontaneous deployment;

   b) In failing to design the Vehicle (including all of its component parts and apparatuses) in a manner that would prevent spontaneous deployment;

8

    c)  In failing to inspect the Vehicle and its component parts prior to placing the Vehicle into the stream of commerce;

    d)  In failing to ensure that the Vehicle conformed to manufacturing specifications;

    e)  In failing to design and manufacture the Vehicle such that it would not allow spontaneous air bag deployment during its anticipated use;

    f)  In failing to adhere to its express and implied warranties of fitness and use; and

    g)  In failing to include the Vehicle in prior recall campaigns.

55.    The defects in the Vehicle render the Vehicle unfit for its intended purpose now and at the time of its manufacture and sale, such that the principles of redhibition as recognized by the laws of the State of Louisiana apply to this action.

56.    Upon information and belief, Defendant knew that the defects in the Vehicle existed at the time of its manufacture and sale and is therefore deemed to be in "bad faith"

57.    Plaintiff is entitled to recover damages due to the redhibitory defects in the Vehicle which include, but are not limited to, loss of use of the Vehicle, diminished value, return of the purchase price, repair of the Vehicle, and monetary damages due to Defendant's bad faith.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays as follows:

58.    For a trial by jury and judgment against Defendant, FCA US L.L.C. for sums as actual and other compensatory damages, costs, interest and attorney fees as are applicable and in excess of the minimum jurisdictional limit of this Honorable Court;

59.    For such other and further relief to which Plaintiff is entitled and as this Honorable Court may deem just and proper.

## REQUEST FOR TRIAL BY JURY

60. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues triable by jury, as enumerated and set forth in more detail in this Complaint.

          Respectfully submitted,

          **/s/ John H Smith**
          John H Smith, Bar Roll No. 23308
          Loren D. Shanklin, Bar Roll No. 33366
          Alicia M. Sosa, Bar Roll No. 34101
          **SMITH SHANKLIN SOSA, L.L.C.**
          16851 Jefferson Highway, Suite 7C
          Baton Rouge, Louisiana 70817
          Telephone: 225-223-6333
          Facsimile: 888-413-8345
          john@smithshanklin.com
          loren@smithshanklin.com
          alicia@smithshanklin.com

          -AND-

          Gary M. Gaudin, Bar Roll No. 23089
          Law Office of Gary M. Gaudin
          712 N. Burnside Avenue
          Gonzales, Louisiana 70737
          Telephone No. (225) 644-5612
          Facsimile (225) 644-5012
          ***Attorneys for Plaintiff***