UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CURTIS RAY WEAMS, JR.** | * | CIVIL ACTION NO. 3:17-cv-00004 |
| | * | |
| **Plaintiff,** | * | |
| | * | JUDGE SHELLY D. DICK |
| **VERSUS** | * | |
| | * | |
| **FCA US L.L.C.** | * | MAG. JUDGE RICHARD L. BOURGEOIS |
| | * | |
| **Defendant.** | * | |
| | * | JURY TRIAL REQUESTED |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE OPINION TESTIMONY OF DR. WILLIAM J. VIGILANTE, JR. AS UNTIMELY AND UNRELIABLE**

Plaintiff, Curtis Ray Weams, Jr. ("Plaintiff"), seeks relief from Defendant, FCA US LLC ("FCA US"), in this automotive products liability matter arising from a single-vehicle incident involving a 2004 Jeep Liberty (the "Vehicle").

The lawsuit stems from the alleged spontaneous deployment of the driver's airbag on January 16, 2016 (the "Incident"), at which time the Vehicle was 14 years old with an odometer reading of approximately 115,000 miles. With no specific explanation as to why the deployment occurred, plaintiff seeks to attribute the Incident to an unspecified defect of the Vehicle's airbag system.  In support, Plaintiff has offered William J. Vigilante, Jr., who has opined that the Vehicle is defective for lack of an adequate warning concerning the possibility of inadvertent airbag deployment. Vigilante's testimony should be excluded pursuant to Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny for

1

four reasons. First, Vigilante is unqualified to render opinions regarding airbag warnings. Second, he failed to utilize a reliable methodology. Third, his supplemental opinions should be struck as untimely. And finally, he has offered opinions concerning airbag warnings that are preempted by and conflict with federal law, which both exposes his substandard methodology and bars his opinions from reaching the jury.

**I.     FACTUAL BACKGROUND**

Plaintiff purchased the Vehicle "used" on August 28, 2010, when its odometer reading was about 64,000 miles.[1] Almost nothing is known about the vehicle's history leading up to that date. By the date of this Incident, the Vehicle's odometer reading was approximately 115,000 miles, and the Vehicle was 14 years old.[2] Prior to the Incident, the Vehicle sat idle for almost 6 months.[3] Plaintiff claims that he planned to bring the Vehicle to a local service facility on the day of the Incident to get a repair estimate so that the vehicle could be returned to service, and Plaintiff had started the vehicle several times that day without incident.[4]

With respect to the incident itself, Plaintiff alleges that, just before the Incident, he opened the driver's door of the parked Vehicle, reached inside but with his feet on the ground, used his right hand to insert the key into the ignition and turned the key.[5] Upon turning the key to the "Start" position, Plaintiff alleges that the driver's airbag deployed, striking him and causing injuries.[6] According to Plaintiff, the Vehicle's transmission was in "Park," and the

---

[1] Exhibit A, Weams Dep., 68:18-20; 68:21-25.
[2] Exhibit A, Weams Dep., 69:7-11.
[3] Exhibit A, Weams Dep., 69:17-21.
[4] Exhibit A, Weams Dep., 74:8-11.
[5] Exhibit A, Weams Dep., 77:13-25 – 80.
[6] *Id.*

2

Vehicle was stationary at the time of the deployment.[7] Plaintiff, through Dr. Vigilante, claims that the vehicle is defective because FCA did not provide a warning that the airbag could deploy inadvertently.

In his first expert report, which was timely issued, Vigilante opined that FCA US should have included a label comparable to the following on the sun visor.[8]

**⚠ WARNING**
**Inadvertent Airbag Deployment!**
- Airbag can deploy without warning when ignition is turned on.
- Only turn the ignition on when fully seated with your back against the seat.
- Injury can occur if airbag deploys and you are out of position.

Illustration 1. Exemplar warning label.

Vigilante's report acknowledged that FCA US had sold the vehicle with a permanent warning label specifically addressing the vehicle's airbag system. Located on the sun visor that leaves the warning visible when the visor is stowed, the warning contained on the vehicle is specifically approved by the National Highway Traffic Safety Administration (the "NHTSA") and is compliant with Federal Motor Vehicle Safety Standard 208. That label appears below:[9]

---

[7] *Id.*
[8] Exhibit B, Vigilante Dep., Exh. 3.
[9] *Id.*



To be clear, the label that appears on the vehicle today, shown above, is identical to the label that appears on every airbag-equipped vehicle in this country, and its appearance, location, language, font size, graphics and size are federally-mandated.

According to Vigilante's first report, because the "FMVSS do[] not allow vehicle manufacturers to place additional warning[s] on the same side of the visor as the airbag and rollover warnings," his proposed warning should have been placed "on the opposite side of the sun visor."[10]

Remarkably, Vigilante offered this suggestion for an additional label on the sun visor without reading the applicable law or even the citation that he offered as support for his opinion. As pointed out by FCA's own human factors and warnings expert, Nathan Dorris, Ph.D., FMVSS 208 expressly prohibits any additional warnings on either side of the sun visor:

> "no other information about air bags or the need to wear seat belts shall appear anywhere on the sun visor."[11]

---

[10] *Id.*
[11] 49 C.F.R. § 571.208.S4.5.1.(b)(5)(ii).

After learning of his grievous error, Vigilante issued a supplemental report on March 15, 2018.  Presumably in an effort to skirt this court's deadline for expert reports, his report opens with the assertion that his opinions "have not changed."[12]  The report goes on, however, both to acknowledge that his first suggestion was violative of federal law and then to opine that "there were multiple other options available to Chrysler to present the on-product warning."[13]  In deposition, Vigilante retracted the his first suggestion offered in his first report and proposed that an on-product label be placed on the headliner above the visor (*i.e.*, the interior ceiling/roof of the vehicle).[14]  Vigilante has identified no other locations for the on-product warning.[15]

## II.    GOVERNING LEGAL STANDARD

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702" and directs "trial courts [to] act as gate-keepers overseeing the admission of scientific and non-scientific expert testimony." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 583 (5th Cir. 2004); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). The party offering the expert witness bears the burden of proving that his proposed

---

[12] Exhibit C, Vigalante Dep., Exh. 7.
[13] *Id.*
[14] Exhibit D, Vigalante Dep., 58:8-13.
[15] Exhibit D, Vigalante Dep., 58:14-18.

expert testimony is admissible. *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016).

"Before allowing expert testimony to be heard, the district court must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training or education.'" *Sittig v. Louisville Ladder Grp. LLC*, 136 F. Supp. 2d 610, 615 (W.D. La. 2001) (quoting Fed. R. Evid. 702). "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (internal quotation marks omitted) (citation omitted). "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) (affirming exclusion of accident reconstruction expert who had "never experimented or conducted studies in the field, and never published anything on the subject").

If the court determines that the expert witness is sufficiently qualified, it must then make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue," i.e., that the proffered testimony is both reliable and relevant. *Daubert*, 509 U.S. at 592–93.

   **A. Vigilante is Not Qualified to Render Opinions Regarding Airbag Warnings.**

Whether a witness is qualified to testify as an expert is left to the sound discretion of the trial judge, who is in the best position to determine both the claimed expertise of the witness and the helpfulness of his testimony. *Sullivan v. Rowan Cos.*, 952 F.2d 141, 144 (5th Cir. 1992). The

6

proponent of expert testimony must establish the expert's qualifications by a preponderance of the evidence. *United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997). Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999). Regardless of its source, "the witness's ... specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact." *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013).

In terms of education, Vigilante holds a Doctorate in psychology and ergonomics from North Carolina State University, and he is board certified in professional ergonomics. He is also a member of several professional organizations, and he has authored numerous publications on various topics. But while Vigilante may be qualified to offer opinions concerning warnings in other contexts, the fact that he issued an opinion in this matter that violates federal law – a point that he now openly concedes – proves that he is not qualified to offer opinions concerning warnings and instructions in the context of airbag systems. The complexity of airbag systems and warnings requires unique and highly specialized knowledge and expertise.[16]

Vigilante's lack of knowledge and experience on the subject of airbag warnings may well stem from the fact that he has never participated in warnings systems work for any automobile manufacturer,[17] nor has he ever designed or participated in the design of a warning for an

---

[16] Recognizing that an understanding of airbag technology demands much more than common sense, numerous courts have required expert testimony to prove an alleged airbag defect. See, e.g., *McCoy v. General Motors Corp.*, 47 F. Supp. 2d 838, 839 (E.D. Ky. 1998) (plaintiff could not establish that airbag was defective without expert testimony as to why the airbag did not deploy); *St. Clair v. General Motors Corp.*, 10 F. Supp. 2d 523, 531-33 (N.D.N.C. 1998) (driver unable to establish defect of airbag without expert testimony).
[17] Exhibit D, Vigalante Dep., 6:13-16.

airbag.[18] Vigilante's lack of expertise in this area – and the consequences of offering uninformed opinions in this highly specialized field – are on full display here, as no adequately trained and experienced expert in the field would offer an opinion that violates federal law. The following excerpts from Vigilante's deposition confirm his lack of expertise and the error of his ways.

As follows, Vigilante did not even read the entire text of FMVSS 208, which applies to airbag warnings, yet he seeks to issue an opinion regarding applicable airbag warnings.

> Q. You don't recall whether you reviewed FMVSS before you prepared your report or in preparing your report in this matter?
>
> A. Again, I know that I did not review the entire section. I don't recall if I reviewed parts related to the airbag or airbag warning or not.[19]

And then he acknowledges the consequences of his flawed methodology:

> Q. Is it fair to say, if you had done a thorough review of those materials before rendering that first report, that you would not have made that recommendation that Chrysler include an on-the-visor warning related to inadvertent airbag deployment?
>
> A. Yes. If I didn't make the oversight in my review of the chapter, I wouldn't have had specifically stated on the visor. I would have picked another location in the vehicle as an example to where Chrysler could have and should have provided it.[20]

Vigilante's lack of knowledge and experience in the highly specialized field of automotive airbag warnings resulted in his rendering an opinion that violates federal law, and his opinion should be excluded for this reason alone. Further, however, tracking the mandate of Rule 702, Vigilante's opinions and work in this highly specialized field are also inadmissible because the testimony is unreliable as it is NOT based on sufficient

---

[18] Exhibit D, Vigalante Dep., 47:5-7.
[19] Exhibit D, Vigilante Dep., 93:16-21.
[20] Exhibit D, Vigalante Dep., 56:12-22.

facts or data; the testimony is NOT the product of reliable principles and methods; and the expert has NOT reliably applied the principles and methods to the facts of the case.

### B. Vigilante Failed To Employ Any Semblance of a Reliable Methodology to Formulate His Opinions.

Vigilante's expert report and deposition testimony are bereft of any indication of a reliable methodology employed to formulate his opinions. With regard to reliability, the court may consider factors such as "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Burleson*, 393 F.3d at 584. Additional factors to consider may include "whether the expertise was developed for litigation or naturally flowed from the expert's research [or] whether the proposed expert ruled out other alternative explanations." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2008). In short, the Court's role is to "separate[] expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.*

Vigilante's methodology, or lack thereof, fails to satisfy the reliability factors identified by the Fifth Circuit. *See Burleson*, 393 F.3d at 584. His recommendation for an additional sun visor label on the subject of airbags, which was framed solely for this case and apparently applies to no other vehicle on the roadway, was never published in any context before this case, much less subjected to peer review. Indeed, the first peer who reviewed Vigilante's ludicrous recommendation, FCA's warnings expert, Nathan Dorris, Ph.D., recognized immediately that the

9

recommendation violates federal law.[21] As set out in the deposition excerpt above, even Vigilante recognized the grievous error of his opinions from his first report, but not until after the peer review from Dr. Dorris.

Dr. Dorris's analysis and commentary – and Vigilante's own concession when confronted with the error – expose Vigilante's failure to satisfy the fourth *Burleson* criterion. Under no circumstances would Vigilante's opinion be "accepted in the relevant scientific community."

As if that alone were not sufficient to warrant his rejection, Vigilante posits that a different warning would have been heeded and would have prevented this harm, despite having no evidentiary basis to assess whether Plaintiff read the available warnings.

Still further, Vigilante testified that while frequency and likelihood of a given occurrence are important to measuring the need for a warning, he is personally aware of no other inadvertent airbag deployment involving a stationary Jeep Liberty.[22] Vigilante also conceded that he is unaware of any warning on any vehicle that warns users of the possibility for an inadvertent airbag deployment.[23]

Despite his remarkable lack of qualifications, data, and any semblance of a reliable methodology, Vigilante seeks to opine that FCA US should have included a warning regarding the risk for inadvertent airbag deployment its 2004 Jeep Liberty vehicles. Vigilante's opinions represent nothing more than his own unresearched, untested, personal, hindsight-based opinions framed solely for the purpose of supporting a finding of liability against FCA in this case. Vigilante's opinions are inadequate under the law.

---

[21] Exhibit E, Vigilante Deposition, Exh. 16.
[22] Exhibit D, Vigilante Dep., 80: 8-24.
[23] Exhibit D, Vigilante Dep., 86:4-7.

### C. Vigilante's Supplemental Report and Theory that FCA US Should have Equipped the Vehicle with a Warning on the Headliner is Both Untimely and Unreliable.

Vigilante's supplemental report opens with the absurd statement that his opinions "have not changed." He then Vigilante goes on to acknowledge the error of the only opinion offered in his first report and to offer new opinions and recommendations. Specifically, his supplemental report, which was first produced at his deposition taken on May 23, 2018, posits that "there were multiple other options available to [FCA US] to present the on-product warning."[24]

At the outset, his supplemental report and opinions are untimely. Rule 26 mandates that "an expert report shall contain a complete statement of all opinions to be expressed." *See* Fed. R. Civ. P. 26(a)(2)(B). Rule 26 further provides that "[t]hese disclosures shall be made at the times and in the sequence directed by the court." *See* Fed. R. Civ. P. 26(a)(2)(C). The purpose of these procedures is "to provide information on expert testimony sufficiently in advance of trial [so] that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *See* Fed. R. Civ. P. 26, 28 U.S.C. (advisory committee notes 1993).

In addition to or in lieu of not allowing the non-complying party to use the undisclosed information or witness as evidence at a trial, at a hearing, or on a motion, a court may "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1). These sanctions may include dismissing the case against the non-complying party or, at the very least, striking the untimely opinion. *Id.*; *see also Brumley v. Pfizer, Inc.*, 200 F.R.D. 596, 604 (S.D. Tex. 2001) (The court strikes any opinion not contained in the initial Rule 26 report).

---

[24] *Id.*

Vigilante's Rule 26 report was due on February 16, 2018. (R. Doc. 23). The only opinion in Vigilante's first report concerns his suggestion that an additional label be affixed to the sun visor. Therefore, Vigilante's March 15, 2015 opinion, which was not provided to counsel until his deposition on May 23, 2018, that FCA US had "multiple other options available" for affixing an on-product warning regarding inadvertent deployment is untimely under Rule 26, and it should be excluded.[25]

Not only should this opinion be excluded as untimely, but Vigilante did not employ any semblance of a reliable methodology in reaching these opinions either. In fact, other than the calling for a warning on the Vehicle's headliner, Vigilante has identified no specific location for such an on-product warning.[26] Not surprisingly, then, Vigilante did not test the human response to the placement of the warning on the headliner or any other location within the vehicle. When pressed as to the specifics of his recommendations, Vigilante declined to do so, testifying that the warning should be placed where FCA US "found it to be appropriate and effective."[27]

Under Louisiana law, however, a design defect claim for lack of an adequate warning requires a specific alternative warning. *Krummel v. Bombardier Corp.*, 206 F.3d 548 (5th Cir. 553). An alternative warning must be reasonably specific and not based on mere speculation." *Gray v. Indus. Plant Maint.*, No. Civ. A. 01-1167, 2004 WL 1661209, at *5 (E.D. La. July 23, 2004).

Vigilante's opinion to place the warning "anywhere" in the Vehicle is impermissibly vague and plainly is based on speculation. Vigilante's opinion came only after having been

---

[25] Of note, although the supplemental report from Vigilante is dated March 15, 2018, it was first provided to counsel for FCA US during Vigilante's deposition on May 23, 2018. Vigilante Dep., 11:4-16.
[26] Exhibit D, Vigilante Dep., 58:14-18.
[27] Exhibit D, Vigilante Dep., 57:10-14.

12

exposed for offering an initial opinion that ran afoul of federal law. Still further, Vigilante has not evaluated whether his proposed warning undermines other federally mandated airbag warnings within the Vehicle's cabin. Nor has his proposed warning been subjected to peer review, so that there can be no known rate of error. Vigilante's opinion to place the additional warning on the vehicle is not just untimely, but simply untenable and it should be excluded.

### D. Vigilante's Opinions Are Preempted by Federal Law.

The Supremacy Clause of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... anything in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. State law that conflicts with federal law is "without effect." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 744–46, 101 S.Ct. 2114, 2128 (1981)). Whether federal statutes or regulations preempt state law is "a question of congressional intent." *Perry v. Mercedes Benz of North America, Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992). Congress—through federal laws and regulations—may preempt state law in three ways: (1) express preemption; (2) field preemption (regulating the field so extensively that Congress clearly intends the subject area to be controlled only by federal law); and (3) implied (or conflict) preemption. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 767 (11th Cir. 1998). In this case, the FMVSS both expressly and impliedly preempt plaintiff's state law tort claim.

### 1. Express Preemption

Plaintiff's warnings claim is expressly preempted by the preemption clause of the FMVSS 208, which states in relevant part:

> When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe

13

> or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment *only if the standard is identical* to the standard prescribed under this chapter....

49 U.S.C. § 30103(b)(1) (formerly 15 U.S.C. § 1392(d)) (emphasis added). The Act contains a savings clause, which provides that "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e)(formerly 15 U.S.C. § 1397(k)). The presence of the savings clause requires that the pre-emption provision be read narrowly to preempt only state statutes and regulations. *Geier v. American Honda Motor Co., Inc.,* 529 U.S. 861, 862, 120 S.Ct. 1913, 1914 (2000).

The savings clause does not compel a different result here, however. The proper focus here is on whether the opinions that Vigilante seeks to offer here are inconsistent with federal law. Because his opinions seek to prescribe a standard that is different from FMVSS 208, it is expressly preempted by federal law. FCA US cannot comply with FMVSS 208 and also warn of the alleged potential for inadvertent airbag deployment. To include such language in a warning would conflict with the NHTSA mandate, which expressly states that "the language on additional air bag warning labels placed elsewhere in the vehicle interior shall not cause confusion or [contradict] any of the statements required in the air bag sun visor label."

### 2.     Implied Preemption

Implied conflict preemption applies when state law conflicts with federal law, making it impossible to comply with both, or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Lewis*, 107 F.3d at 1500 (internal quotations and citation omitted). The existence of an express preemption clause does not necessarily preclude the presence of implied preemption. *Freightliner Corp. v.*

14

*Myrick*, 514 U.S. 280, 286–90, 115 S.Ct. 1483, 1487–88, (1995). Thus, if plaintiff's state law tort claim conflicts with FMVSS 208 or if his claim would hinder Congress's objectives in passing the Act, the state law will be preempted. *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998).

In *Fisher v. Ford Motor Company*, the Sixth Circuit found implied preemption under FMVSS 208 of a plaintiff's claim that a manufacturer owed a duty to provide airbag warnings that differed from the federally mandated warnings on the subject. *Fisher*, 224 F.3d 570 (6th Cir. 1970). In that case, a driver was injured when her airbag deployed during a low-speed collision. *Id*. at 572. Because of her short stature, the driver sat very close to the steering wheel, and had adjusted her seat to the maximum forward position. *Id*. The plaintiff sustained severe injuries, and it was uncontested that her injuries were caused by the airbag's deployment, rather than by the impact of the collision. *Id.*

The plaintiff, through her experts, acknowledged that the standard safety instruction on the federally mandated warning mounted on the sun visor cautions drivers not to sit too close to the airbag, but complained because the warning does not warn drivers of short stature of the special risk to them, nor was the warning displayed anywhere else, for example, on the steering column. *Id.* The district court granted summary judgment on these warnings claims, finding that the state law claims were preempted by the FMVSS, and the appellate court affirmed. *Id*; *see also Kitts v. General Motors Corp.,* 875 F.2d 787, 789 (10th Cir. 1989) (NTHSA and FMVSS 208 impliedly preempt airbag warning claims.).

The court yielded to the NHTSA's belief that its prescribed warning language pertaining to air bags as "not simply the minimum, but as the sole language it wanted on the subject." As

15

the court recognized, the NHTSA feared "information overload, i.e., that additional warnings would distract from the warnings it had determined were critical, leading consumers not to focus properly on the latter." The court also acknowledged the NHTSA's intent not to include additional warnings, reasoning that additional warnings could "simply lead people to pay no attention to them." Consequently, the Sixth Circuit held that additional labels could only contain the same language as mandated on the sun visor labels, so that any state law requiring a manufacturer to provide any other warning on the subject of airbags would run afoul of the implied preemption created by the FMVSS.

Here as in *Fisher*, plaintiff argues that FCA US should have incorporated an on-product warning label regarding airbags. The plaintiff's proposed warning, however, does not comport with the federally mandated language regarding airbags. Even though no other vehicle on the road carries such a warning, Vigilante opines that the warning should have been included on this vehicle and should have warned of the potential for the airbag to deploy inadvertently. As explained in *Fisher*, including such language could lead to "information overload," which is contrary to Congress's purpose in establishing the regulation. In fact, Vigilante concedes that NHTSA intended to limit and standardize the amount of information regarding airbag warnings.

> Q. Do you accept that it is one of-the NHTSA's goals, to standardize airbag warnings across makes and models of vehicles?
>
> A. I do. And again, that is not the issue relevant to my analysis or report, so I don't know why Mr. Dorris is bringing that up in his critique of my report.[28]

\*\*\*

---

[28] Exhibit D, Vigilante Dep., 116:8-14.

> Q. Do you dispute that NHTSA specifically sought to avoid overload by providing too many messages in the context of its review of the airbag warnings issue?
>
> A. I am aware that was an issue that NHTSA was concerned about and addressed when dealing with airbag warnings.[29]

Notwithstanding these acknowledgments, Vigilante, who has no training or experience in the field of airbag warnings and who has never even read the complete docket that reflects the NHTSA'S careful consideration and weighing of competing interests and arguments concerning the subject of airbag warnings, seeks to offer opinions that violate federal law.[30] The NHTSA, pursuant to FMVSS 208, has clearly delineated the standard for airbag warnings. That warning appears today on every vehicle in this country that is equipped with an airbag. Vigilante's uninformed assertions developed solely for this case and solely to pin liability on FCA US for Mr. Weams' injuries are preempted. Preemption precludes any state tort law or expert opinion that would stand as an obstacle to the objectives of FMVSS 208. Vigilante's opinions should be excluded.

### III.  CONCLUSION

Vigilante's opinions that the Vehicle should have include an additional on-product warning regarding the potential for inadvertent airbag deployment is inadmissible, as his opinions are unreliable, uninformed, inconsistent with federal law, and would be of no assistance to the jury. Further, his supplemental report is untimely pursuant to Federal Rule of Civil Procedure 26. As a result, his testimony should be struck in its entirety.

---

[29] Exhibit D, Vigilante Dep, 127:14-25; 128:1-2.
[30] Exhibit D, Vigilante Deposition, 93:16-21.

Respectfully submitted,

*/s/ Gary G. Hebert*
GARY G. HEBERT (19446)
CAMILLE R. BRYANT (35063)
MARSHALL T. COX (36423)
McGlinchey Stafford, PLLC
601 Poydras Street, 12th Floor
New Orleans, Louisiana 70130
Telephone (504) 586-1200
Facsimile (504) 596-2800
**ATTORNEYS FOR FCA US LLC**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which shall send notification of such filing to all attorneys of record.

*/s/ Gary G. Hebert*
GARY G. HEBERT