

DORRIS AND ASSOCIATES INTERNATIONAL, LLC

1075 Peachtree Street  NE   Suite 3750   Atlanta, GA 30309   P 770.487.2138   F 770.487.0108   W www.dorrisassociates.com

March 13, 2018

Gary Hebert
McGlinchey Stafford
601 Poydras Street
Suite 1200
New Orleans, LA 70130



Re: Weams v. Fiat Chrysler

Dear Mr. Hebert:

As requested, the following is a report pertaining to opinions that I will offer in the litigation referenced above.

*QUALIFICATIONS*

My background and qualifications are provided on my attached curriculum vitae. Briefly, my area of experience and expertise, pertinent to this litigation, is warnings and communications pertaining to product safety. I hold a Ph.D. in Industrial and Systems Engineering from Auburn University and my area of specialization was Human Factors Engineering (HFE), including advanced courses in Human Factors, Safety Engineering, and Ergonomics. My graduate studies were funded by the National Institute for Occupational Health and Safety (NIOSH) Deep South Education and Research Center (ERC). Also, I have been certified by the Board of Certification in Professional Ergonomics (BCPE).

During my professional work experience, I have routinely performed evaluations of the design and development of warnings and similar precautionary information. Dorris and Associates International, LLC provides product safety services to a wide variety of entities. Clients include corporations, non-profit organizations, trade associations, state and federal governmental agencies, as well as defense and plaintiff's attorneys. Client services have been performed in the U.S., Canada, U.K., France, Germany, Spain, Belgium, Australia and Japan.

For many years, I have served on the American National Standards Institute (ANSI) Z535 Committee that promulgates voluntary, consensus warning standards and currently I serve as the chairman of the ANSI Z535.5 standard subcommittee.

1

Additionally, I am an Affiliate Professor at Auburn University, where I have taught the graduate course in Human Factors Engineering (HFE). I have given numerous presentations and authored various articles, technical reports, and a book chapter on the design of warnings and behavioral responses to safety messages. A listing of my publications is included on the attached curriculum vitae. The charge for my services in this litigation is $385.00 per hour plus expenses. Attached is a list of trial and deposition testimony I have given over the past four years as well as my most recent curriculum vitae.

### *MATERIALS REVIEWED*

In my analysis of this matter, I have reviewed the following materials specific to this case:

- Complaint for Damages
- FCA US LLC's Responses to Plaintiff's First Set of Requests for Production
- FCA US LLC's Responses to Plaintiffs First Set of Interrogatories
- Plaintiff's Responses to Requests for Production Propounded by FCA US LLC's
- Plaintiff's Responses to Interrogatories Propounded by FCA US LLC's
- FCA LLC's Supplement Responses to Plaintiff's First Set of Requests for Production
- FCA US LLC's Responses to Plaintiff's First Request for Admissions
- FCA US LLC's Responses to Plaintiff's Second Set of Interrogatories
- FCA US LLC's Responses to Plaintiff's Second Set of Requests for Production
- Scheduling Order
- Extended Scheduling Order
- Preliminary Vehicle Inspection Report (PVIR)

- Photos of Injuries and Subject Vehicle
- 2004 Jeep Liberty Owner's Manual (FCA_Weams 000004- FCA_Weams 000377)
- 2004 Warranty Information (FCA_Weams 000378- FCA_Weams 000421)
- CAIR Inspection Photos (FCA_Weams 000422- FCA_Weams 000562)
- 2004 Jeep Liberty Brochure (FCA_Weams 000566- FCA_Weams 000593)
- Chrysler Dodge Jeep Service Bulletin, 3/19/2005, (FCA_Weams 000594)
- Carfax Vehicle History Report (FCA_Weams 000595- FCA_Weams 000599)
- Customer Assistance Inquiry Report (CAIR)
- Warranty Claim Summary Report
- Vehicle Information Detail Report
- Warning Label Found on Sun Visor of subject Vehicle
- Photos of Subject Vehicle-Kresmery 12/19/2017
- Photos of Subject Vehicle-Raphael 12/19/2017

FCA Ex E.0002

- Photos of Subject Vehicle-Royek
  4/20/2017

- Correspondence from Mr. Kon at
  Chrysler to Angela Weams,
  2/17/2016

- Deposition of Angela Weams,
  12/21/2017

- Deposition of Curtis Ray Weams,
  Jr., 7/20/2017

- Report, CV, and Testimony List
  authored by William J. Vigilante,
  2/15/2018

In addition to the above materials, my opinions are based upon my education and
training, in the fields of Human Factors Engineering (HFE) and product safety as
well as familiarity with the safety aspects of the published scientific literature and
standards in these fields.

## WARNINGS RESEARCH

Over the past quarter of a century there has developed a sizable literature on
behavioral responses to warnings. Since the design of safety communications and
the systematic analysis of responses to those communications is an aspect of HFE,
many of the studies are reported in the HFE literature. Significant reviews of this
literature can be found in DeJoy (1989), Ayres et al. (1998), and Rogers et al.
(2000). A commonly used definition of a warning is a message intended to reduce
the risk of injury by encouraging certain patterns of behavior or discouraging
certain other patterns of behavior.

Receivers that are not seeking safety information about a product are unlikely to
attend to warnings they observe. Ayres et al, reported:

> "Results of recent warnings studies are consistent with the communication
> theory principle that people who are not looking for a particular type of
> information (be it instructions or warnings) are unlikely to notice and use
> that information if they encounter it" (Ayres et al., 1989).

For a warning to change an individual's behavior, that person must not only notice
and read the warning, but also agree with the message or believe the precautions
should be followed. For example, an individual may decide not to follow a warning
because they believe they will be successful without following the safety message
(i.e., affordance perception, see Ayres et. al, 2000) or that following the warning
may require more time or effort than they are willing to expend (i.e., cost of
compliance, see Rogers et al. (2000).

## FACTS AND OPINIONS

On the basis of my education and experience as outlined above and on the attached
curriculum vitae, the literature on warnings including but not limited to those

3

FCA Ex E.0003

referenced in this report, and the materials reviewed for this case as listed above, I have reached the following opinions that I hold to a reasonable degree of scientific certainty:

1. *Warning System Is Reasonable and Appropriate*

From a human factors perspective, the warnings and instructions associated with the air bag system of the 2004 Jeep Liberty were reasonable and appropriate in terms of location, presentation and content. Precautionary information was provided through warning labels affixed to the vehicle as well as in the associated owner's manual.

Which relevant warn was affixed to veh or in the manual?

(a) *A Brief History of Air Bag Warnings*

The National Highway Traffic Safety Administration (NHTSA) developed and mandates safety information for air bags in motor vehicles sold in the United States. The requirements were a result of considerable human factors analysis and deliberation, including several rulemakings that involved eliciting input and discussion from stakeholders as well as the agency conducting its own research. Federal Motor Vehicle Safety Standard (FMVSS) 208 outlines the safety information requirements.

Initially, air bag warnings were specifically mandated by NHTSA as a result of a petition filed by the Motor Vehicle Manufacturers Association (MVMA). NHTSA's stated goal was to "...set forth the basic do's and don'ts that occupants should follow to obtain maximum protection from air bags, while avoiding a label which creates an 'information overload,' in response to which, consumers would likely pay less attention to the information" (Final Rule, 9/2/92).

The public record of the development of the warning provisions makes clear that there was substantial concern, particularly among consumer safety groups, about the possibility that overly strong and explicit warnings would unduly frighten consumers and lead them to reject or disable air bags. As a consequence of these competing safety concerns, NHTSA rejected some of the more explicit language proposed by MVMA.

In 1996, the warnings were revised representing a significant change in policy regarding the accident prevention strategy of NHTSA with respect to children and air bags. Children were identified as a distinct group at risk of injury from air bags and the content of the new warnings was modified accordingly.

The warning requirements were updated again in the early 2000's to reflect newly introduced advanced air bag technology. Despite these changes, the agency's original goals remained consistent: providing the "basic do's and don'ts" while avoiding information overload and messages that may frighten or cause consumers to reject or disable air bags. I have authored a number of articles addressing the development and evolution of air bag warnings (Dorris & Dorris 2001a; 2001b; Dorris & Burke 2011).

4

FCA Ex E.0004

*(b) Available Safety Information*

As it relates to this matter, the safety information alerts readers to the potential for injury associated with being too close to an air bag if it deploys. The safety information is clear, direct and explicitly addresses the danger as well as how to minimize the risk.

Safety information was communicated through the mandated sun visor labels and required information in the owner's manual, using both safety symbols (pictorials) as well as written messages. With respect to presentation, the safety messages are consistent with accepted practice in safety communications and generally with Z535 formatting conventions.

Relevant safety information includes:



*Figure 1. Sun visor warning label (FCA_Weams 000600).*

FCA Ex E.0005



WARNING!

- Being too close to the steering wheel or instrument panel during airbag deployment could cause serious injury. Airbags need room to inflate. Sit back, comfortably extending your arms to reach the steering wheel or instrumental panel.

- If the vehicle has window bags, they also need room to inflate. Do not lean against the door or window. Sit upright in the center of the seat.

*Figure 2. Page 49 of owner's manual (FCA_Weams 000052).*

The inflating window bag pushes the outside edge of the headliner out of the way and covers the window. The airbag inflates in about 30 milliseconds (about one quarter of the time it takes to blink your eyes) with enough force to injure you if you are not belted and seated properly.

*Figure 3. Page 55 of the owner's manual (FCA_Weams 000058).*

FCA Ex E.0006

*(c) Warnings About Inadvertent Air Bag Deployment Are Unnecessary*

From a safety communications perspective, the 2004 Jeep Liberty is not defective for lack of any explicit warning about inadvertent or unexpected deployment of the air bags. Consistent with the goals of NHTSA, the warning system appropriately focuses on risks associated with a properly manufactured and maintained air bag system.

> So he admits it was not a properly manuf air bag?

For a warning designer, the decision about when to include an admonishment concerning a potential hazard can be complex. The type of hazard as well as the nature and likelihood of an injury are important considerations. Even in the case of a mechanical hazard, which if not avoided will certainly cause an injury, a warning is not always provided. A review of the available guidance for warning designers, find that most guidelines suggest injury severity and likelihood as primary considerations when determining which hazards to warn about (see Miller & Lehto, 1986; and Frantz, Rhoades & Lehto, 1999).

> He fails to note that warn are not recommend when haz can be eliminated by designed or adequate guarded.

Providing warnings about all conceivable hazards, including unanticipated events, would likely dilute the more important and relevant warnings for expected users. The available human factors literature has identified several negative consequences associated with the overuse of warnings.

As a general proposition, more is not always better with respect to on-product warnings. Aside from practical issues associated with warning about all conceivable risks, there is no evidence to suggest that users would be willing or able to process all of this information. Horst et al. (1986) suggested:

> "A key concept is that humans are not passive receivers who absorb all information directed toward them. On the contrary, unless a person is in an 'information seeking' mode, the message may not be received at all."

A well-known Human Factors textbook (Kantowitz and Sorkin, 1983) states:

> "From a human factors perspective, excessive warnings are as bad as insufficient warnings. People become accustomed to the warnings and tend to ignore them. Warnings should be reserved for high-probability events. Even then, it is difficult to get people to pay attention to them."

In a review of the available literature related to the issue, Frantz and colleagues identified several deleterious effects associated with "over-warning" (Frantz, Rhoades, Young, & Schiller, 1999). The most important of these harmful impacts is the possible dilution of important precautionary information through reduced attention to warnings. Critical safety messages may go unnoticed or unread, because relatively non-critical information is also conveyed by warnings. Users may be either unwilling or unable to process lengthy warnings. As it relates to air bag warnings, NHTSA

FCA Ex E.0007

specifically sought to avoid overload by providing too many messages (see Dorris & Dorris, 2001a, 2001b).

One must further consider that not all potential hazards are appropriately addressed by warnings as a safety intervention. Warnings and other safety communications are intended to help consumers safely use a properly designed and manufactured product that has been properly maintained and not modified. To the extent that it is alleged in this matter that a defect in the circuit board of the air bag controller caused the inadvertent deployment, that is an alleged design or manufacturing issue and would not be appropriately addressed by warnings or other safety communications.

> I agree

It is not helpful to provide a warning to consumers that despite the manufacturer's intentions and efforts (through designing a robust system) the product may malfunction at some unknown time for unknown reasons and result in an unintended and unanticipated surprise. If an automobile manufacturer included warnings about all the potential hazards associated with all system malfunctions, then consumers would likely be overwhelmed with information, and the warnings would be ineffective.

> A. it was known
> B. the robustness of the sys is in doubt

The air bag system already includes a system to monitor its readiness, as required by FMVSS 208. This is the accepted and customary manner of monitoring the airbag system and communicating with drivers about the systems status. It is unclear if the alleged failure mode would result in the readiness indicator becoming illuminated at all or at the same time as the unanticipated deployment.

> That would be a fault in the sys then.

NHTSA is aware of instances of inadvertent air bag deployment occurring across many different manufacturers and models of vehicles. Not all of these instances resulted in a conclusion that a defect was present in the design or manufacturing of the vehicle. When defects were identified, those issues were addressed through recall campaigns, not adding warning labels. And in the circumstances where no defect was identified no warning label was added. NHNTSA has never required or even proposed a warning (or any additional safety information) to address this potential event. Obviously, as the agency has already developed and requires air bag safety information for vehicles, NHTSA could mandate an additional safety message about inadvertent air bag deployment, if the agency thought it was necessary or appropriate. Given the goal of standardizing air bag warnings across makes and models of vehicles, the decision of whether to include a warning about inadvertent air bag deployment is one that should be applied consistently throughout the automotive industry. As mentioned earlier, I am not aware of any regulation requiring any warning about inadvertent air bag deployment, including one similar to the label proposed by Dr. Vigilante. Similarly, I am not aware of any voluntary standard, industry guideline, or safety organization suggesting any such warning. I am also not aware of any vehicle manufacturer that provides a similar warning.

> Yet Weams veh was not included so he had no warn

> Why is he shifting prod safety resp to NHTSA?

> Conflated two subjects.

> I am not aware of std designs that allow an airbag to inadvertently deploy.

8

2. *Different or Additional Warnings*

There is insufficient evidence in this matter for one to conclude that any different or additional warning (including the warnings proposed by Dr. Vigilante) provided by FCA would have been noticed, read, and changed the behavior of Mr. Weams as it relates to this incident.

Angela Weams testified that she does not remember if the vehicle had an owner's manual when they purchased the used vehicle (see A. Weams deposition, pg. 27-8). Similarly, Curtis Weams Jr. does not recall receiving or reading the owner's manual. He testified:

> "Q.   And when you purchased the vehicle, did it come with an owner's manual?
>
> A.   I can't recall.
>
> Q.   Okay. Do you recall ever reading the owner's manual for this vehicle?
>
> A.   No, sir.
>
> Q.   Okay. Do you have any information about what the owner's manual says about the airbags?
>
> A.   Say again?
>
> Q.   Do you have any information or any recollection about what the owner's manual says about the airbags in this vehicle?
>
> A.   No, sir" (see deposition of C. Weams, pg. 65-66).

*No evidence that it would not. At least you provide the user w/ informed consent.*

There is no testimony that either Mr. or Ms. Weams noticed or read the available warning labels on the sun visors. As such, there is no evidence to support a conclusion that any additional label would have been noticed, read, and followed at the time of this incident. There is consensus within the available scientific literature concerning responses to safety messages that personal characteristics, situational factors as well as familiarity and the level of perceived danger associated with a given product influence if a user will notice, read, and even comply with a warning. Rogers et al. (2000) concluded:

> "Even a perfectly designed warning that has been noticed, encoded, and comprehended might not be complied with. Several of the person variables that influence compliance are unique to that component of the warning process. For example, individuals' perception of their control over the process, their analyses of the costs of compliance, and their risk-taking style have all been shown to influence compliance" (pg. 130).

As discussed later in this report, the warning label proposed by Dr. Vigilante could not have been provided on the sun visor.

*Not correct*

### 3. Consideration of Dr. Vigilante's Opinions

I have reviewed the report of Dr. William Vigilante. In general, I disagree with his conclusions about warnings in this matter. Specific points of disagreement include, but are not limited to:

> intentionally misstated my report as per his usual tactic

his apparent opinion that all conceivable hazards must be warned about and that the ANSI Z535 standard supports that assertion. For example, he states:

> "Chrysler [sic] failure to comply with long known applicable guidelines, practices, and the American National Standards Z535.4 deprived users of the protection afforded to the public by those guidelines and standards" (pg. 10).

> Made up a false claim and then disputes it as per his usual tactic

As a member of the ANSI Z535 executive committee, I am very familiar with this series of standards. The standards do not provide guidance to manufacturers about when to warn or what hazards to warn about. ANSI Z535.4 does not suggest an on-product warning (or safety message in any location) for automobiles or inadvertent air bag deployment. The standard simply provides formatting conventions to follow after it was decided to provide a label. The standard only addresses the content of a warning in very general terms. As discussed earlier in this report, FMVSS 208 and its mandatory requirements address air bag warnings.

> Misleading.
> A. consensus because they are known formatting factors to be effective.
> B. never stated that other formats could not be as effective or even more effective.
> C. If you can't show a custom format is as effective or more effective than it is improper to rely upon it versus a std format that has been shown effective

To the extent that Dr. Vigilante suggests that warnings should conform to ANSI Z535 standards to be considered adequate, I also disagree. ANSI Z535.4 reflects consensus for a uniform set of formatting conventions. The voluntary standard does not attempt to provide some measure of effectiveness. In fact, published human factors research has demonstrated that warnings formatted according to the ANSI Z535 conventions are not generally more effective in altering users' behavior than warnings without such formatting (Shaver & Braun, 2000; and Young, Frantz, Rhoades, & Darnell, 2002).

While the federally-mandated subject visor warning labels do not comply with all of the requirements ANSI Z535.4, the standard specifically allows for this, stating: "It is not the intent of this ANSI Z535.4 standard to replace existing standards or regulations which are uniquely applicable to a specific industry or use" (section 2.2.1). NHTSA intentionally deviated from some of the requirements of ANSI Z535.4 (see Dorris & Dorris, 2001a).

> Either purposefully misleading or woefully uninformed. Prior to Z535.6, HF/Warn guidelines and std of care was to use formatting features of Z535.4 in manuals.

To the extent that Dr. Vigilante appears to apply ANSI Z535 standards to the owner's manual, that is inappropriate. At the time the subject vehicle was manufactured, there was no ANSI Z535 standard applying to manuals. ANSI Z535.6 was first published in 2006, after the 2004 Jeep Liberty was manufactured and originally sold.

FCA Ex E.0010

- that a warning about inadvertent air bag deployment is necessary and that his proposed label is permitted on the sun visor. Dr. Vigilante's report states:

> "The inadvertent airbag deployment warning system should have included permanent and conspicuous warning decals placed within the cabin of the vehicle. For example, consistent with US Department of Transportation (US DOT) regulations (i.e., Federal Motor Vehicle Safety Standards (FMVSS), Chrysler placed two permanent warning decals (one is related to children and airbags, the other is related to rollovers) on one side of the sun visors in its 2004 Jeep Liberty (7). Although FMVSS does not allow vehicle manufactures to place additional warnings on the same side of the visor as the airbag and roll over warnings, there are no restrictions from providing additional warnings on the opposite side of the sun visor (7)" (pg. 11).

For the reasons outlined in this report, I disagree that his proposed warning is either necessary or appropriate. It would be inappropriate and nonsensical to provide a warning to users that a vehicle is unreasonably dangerous or that it could spontaneously malfunction resulting in a risk of injury. If an automobile manufacturer included warnings about all the potential hazards associated with all system malfunctions, including inadvertent air bag deployment, then consumers would likely be overwhelmed with information, and the warnings would be ineffective.

Dr. Vigilante's statement that "there are no restrictions from providing additional warnings on the opposite side of the sun visor" is completely inaccurate. As a basis for his opinion, Dr. Vigilante cites to a book chapter, rather than the actual regulations. It should be noted the cited chapter also contradicts Dr. Vigilante. The chapter correctly explains the prohibition in FMVSS 208 against other air bag warnings appearing on the sun visor (see Foley 2006, pg. 556). FMVSS 208 clearly prohibits any additional warnings appearing on either side of the sun visor, by stating:

> "no other information about air bags or the need to wear seat belts shall appear anywhere on the sun visor" (see 49 CFR 571.208.S4.5.1(b)(5)(ii)).

- "Had an effective warning system been provided, including a conspicuous, explicit, and specific in-vehicle warning, Chrysler would have ensured that owners and operators of the Jeep Liberty were provided with the information they needed to identify the hazard and how to avoid it and Curtis Weams would not have been injured" (pg. 11 & 13).

11

FCA Ex E.0011

For the reasons previously discussed in this report, I disagree that any different or additional warnings would have prevented the subject accident and resulting injuries.

In the event that additional information is made available to me, I would reserve the right to supplement or amend my opinions.

Sincerely,

Nathan T. Dorris, Ph.D.
Principal Consultant

Attachments

FCA Ex E.0012

## REFERENCES

Ayres, T., Gross, M., Wood, C., Horst, D., Beyer, R. & Robinson, J. (1989). What is a warning and when will it work? *Proceedings of the Human Factors Society 33rd Annual Meeting*, 426-430.

Ayres, T., Wood, C., Schmidt, R., Young, D. & Murray, J. (1998). Effectiveness of warning labels and signs: An update on compliance research. *Proceedings of the Silicon Valley Ergonomics Conference and Exposition*, 199-205.

Ayres, T., Wood, C., Schmidt, R., Young, D., & Murray, J. (2000). Affordance Perception and Safety Intervention. *Proceedings of the IEA 2000/ HFES 2000 Congress*, 6-51 – 6-54.

DeJoy, D.M. (1989). Consumer product warnings: Review and analysis of effectiveness research. *Proceedings of the Human Factors Society 33rd Annual Meeting*, 936-940.

Dorris, N.T. & Burke, K.A. (2011). Mandatory airbag warnings: An updated evaluation. Proceedings of the Society of Automotive Engineers International World Congress, SAE 11B-0026.

Dorris, A.L. & Dorris, N.T. (2001a). Mandatory air bag warnings: A human factors analysis of their development. *Society of Automotive Engineering Technical Paper 2001-010046*.

Dorris, A.L. & Dorris, N.T. (2001b). Supporting the warning designer: An automotive case study. *Proceedings of the Human Factors and Ergonomics Society 45th Annual Meeting*, 865-869.

Foley, J.P. (2006). Regulatory requirements for motor vehicle warnings. *Handbook of Warnings*, 553-563.

Frantz, J.P., Rhoades, T.P., & Lehto, M.R. (1999). Practical considerations regarding the design and evaluation of product warnings. Warnings and Risk Communication; eds. Wogalter, DeJoy & Laughery, Taylor and Francis: Philadelphia, PA; pp. 291-311.

Frantz, J.P., Rhoades, T.P., Young, S.L. & Schiller, J.A. (1999). Potential problems associated with overusing warnings. *Proceedings of the 7th International Conference on Product Safety Research*, 274-279.

FCA Ex E.0013

Horst, D.P., McCarthy, G.E., Robinson, J.N., McCarthy, R.L., & Krumm-Scott, S. (1986). Factors influencing the potential for changing behavior. Proceedings of the Human Factors Society 30th Annual Meeting, pp. 111-115.

Kantowitz, B.H. & Sorkin, R.D. (1983). Human Factors: Understanding People-System Relationships. John Wiley and Sons, Inc.: New York.

Miller, J.M. & Lehto, M.R. (1986). Fuller Technical Publications. Ann Arbor, Michigan. Warnings Volume I: Fundamentals, Design, and Evaluation Methodologies First Edition.

Rogers, W.A., Lamson, N & Rousseau, G.K. (2000). Warning research: An integrative perspective. *Human Factors, 42*, 102-139.

Shaver, E.F. & Braun, C.C. (2000). Effects of warning symbol explicitness and warning color on behavioral compliance. *Proceedings of the IEA 2000/HFES 2000 Congress,* 4-290-293.

Young, S.L., Frantz, J.P., Rhoades, T.P. & Darnell, K.R. (2002). Safety Signs & Labels: Does compliance with ANSI Z535 increase compliance with warnings? *Professional Safety, September 2002,* 18-23.

FCA Ex E.0014



1075 Peachtree Street, NE  Suite 3750  Atlanta, GA 30309   P  770.487.2138

## Nathan T. Dorris, PhD, CPE
### Vice President & Principal Consultant

### Professional Profile:

Nathan Dorris is a human factors specialist (ergonomist) with extensive professional experience in product safety and the evaluation of instructions, warnings and other safety communications. Dr. Dorris is a Principal Consultant for Dorris and Associates International, LLC.  His primary responsibilities include the design and implementation of product safety research, including evaluations of human-machine interfaces as well as the usability and effectiveness of precautionary information.  Dr. Dorris represents Dorris and Associates as a member of the ANSI Z535 main committee and he currently serves as the ANSI Z535.5 subcommittee chairman.  The Z535 series of standards pertain to the design of warning signs, labels and various other safety communications.

Dorris and Associates have a wide variety of clients including private and public corporations, non-profit organizations, trade associations, state and federal governmental agencies, as well as defense and plaintiff's attorneys. Client services have been performed in the U.S., Canada, U.K., France, Germany, Spain, Belgium, Australia and Japan. Products manufactured and/or distributed by these clients range from automobiles and airplanes to everyday consumer products and children's toys.

Dr. Dorris is also an Affiliate Professor in the Industrial and Systems Engineering Department of Auburn University, where he has taught the graduate course in Human Factors Engineering (HFE).

### Education:

B.S., Management, Georgia Institute of Technology; Atlanta, GA  (1997)

M.S., Industrial and Systems Engineering, Auburn University; Auburn, AL  (2004)

Ph.D., Industrial and Systems Engineering, Auburn University; Auburn, AL  (2004)

Last updated October 2015

FCA Ex E.0015

## Professional Affiliations & Service:

Certified Professional Ergonomist (CPE)

American National Standards Institute (ANSI) Z535 Main Committee and Z535.5 Chairman

Human Factors and Ergonomics Society (HFES)

American Society of Safety Engineers (ASSE)

Society of Automotive Engineers (SAE)

The Institute of Industrial Engineers (IIE)

National Safety Council (NSC)

## Honors & Awards:

Auburn University Presidential Graduate Research Fellowship

National Institute for Occupational Safety and Health (NIOSH) Graduate Fellowship

Alpha Pi Mu Industrial Engineering Honor Society

2003 INFORMS Doctoral Colloquium Participant

Outstanding Presentation Award, 2003 Auburn University Graduate Research Forum

## Publications & Reports:

Boelhouwer, E. J., Davis, J., Franco-Watkins, A., Dorris, N. T., and Lungu, C.(2013).Comprehension of hazard communication: Effects of pictograms on safety data sheets and labels. *Journal of Safety Research, 46,*September, 145-155.

Dorris, N.T. and Burke, K.A. (2011). Mandatory airbag warnings: An updated evaluation. In *Proceedings of the Society of Automotive Engineers International World Congress,* SAE 11B-0026. Warrendale, PA: Society of Automotive Engineers.

Burke, K.A., Dorris, N.T., and Dorris, J.A. (2010).  Sunscreen Labeling and Warnings: A Human Factors Analysis.  In *Proceedings of the 3rd International Conference on Applied Human Factors and Ergonomics,* Miami, FL.

Dorris, N.T., Valimont, R.B, and Boelhouwer, E.J. (2007).  Eye Movements While Reading Degraded On-Product Warnings.  In *Proceedings of the Human Factors and Ergonomics Society 51st Annual Meeting,* Santa Monica, CA: The Human Factors and Ergonomics Society.

Glasscock, N.F. and Dorris, N.T. (2006). Warning Degradation and Durability. Prepared for: *The Handbook of Warnings,* edited by M.S. Wogalter.  A volume in the Human Factors and

FCA Ex E.0016

N.T. Dorris, Ph.D.                                                                              Page 3

Ergonomics Series (series editor: Gavriel Salvendy). Mahwah, NJ:  Lawrence Erlbaum Associates (LEA).

Carnahan, B.J., Dorris, N.T., and Kuntz, L.A. (2005).  Designing Anthropomorphic Symbols Using Interactive Evolutionary Design. *Information Design Journal and Document Design*, 13(3), pp. 179-190.

Dorris, N.T., Carnahan, B.J., Orsini, L, and Kuntz, L.A. (2004). Interactive Evolutionary Design of Anthropomorphic Symbols. In *Proceedings of the 2004 IEEE Congress on Evolutionary Computation (CEC)*. New York: The Institute of Electrical and Electronics Engineers.

Carnahan, B.J. and Dorris, N.T. (2004). User-Centered Symbol Design Through Human-Computer Collaboration. In *Proceedings of the Human Factors and Ergonomics Society 48th Annual Meeting*. Santa Monica, CA: The Human Factors and Ergonomics Society.

Dorris, N.T. and Davis, J. (2003). Testing the Effects of Degradation on Comprehension of Warnings. In *Proceedings of the Human Factors and Ergonomics Society 47th Annual Meeting*. Santa Monica, CA: The Human Factors and Ergonomics Society.

Davis, J. and Dorris, N.T. (2003). Current Status of Warning Systems in Forest Harvesting Equipment. USDA Forest Service Research Agreement No. SRS 02-CA-11330132-087.

Flynn, E., Dorris, N.T., Carnahan, B.J. and Holman, T. (2002) Medication Dispensing Errors in Community Pharmacies: A Nationwide Study. In *Proceedings of the Human Factors and Ergonomics Society 46th Annual Meeting*. Santa Monica, CA: The Human Factors and Ergonomics Society.

Dorris, A.L. and Dorris, N.T. (2001) Supporting the Warning Designer: An Automotive Case Study. In *Proceedings of the Human Factors and Ergonomics Society 45th Annual Meeting*. Santa Monica, CA: The Human Factors and Ergonomics Society.

Dorris, A.L. and Dorris, N.T. (2001). Mandatory Air Bag Warnings: A Human Factors Analysis of Their Development. SAE 2001-01-0046. Warrendale, PA: Society of Automotive Engineers.

## Presentations & Seminars:

"The Future of Product Warnings: Some Questions Answered & Some Answers Questioned." American Equipment Manufacturers Product Safety & Compliance Seminar, St. Louis, MO. April 2015.

"Twenty-first Century Warnings in a Global World." Defense Research Institute Product Liability Conference, Washington, D.C. April 4, 2013.

FCA Ex E.0017

"The Development of ANSI Z535.6: Presentation of Safety Messages in Collateral Materials." Invited Panel Member for Discussion at the Human Factors and Ergonomics Society 48th Annual Meeting. New Orleans, LA.

"Warning Systems in Logging Equipment." American Society of Safety Engineers (ASSE) Conference 2004, Las Vegas, NV.

"Identifying Relevant Symbol Design Criteria Using Interactive Evolutionary Computation." IEC Workshop at Genetic and Evolutionary Computation Conference (GECCO) 2004. Seattle, WA. June, 2004.

"Developing Safety Symbols for the Workplace through Interactive Evolutionary Design." American Industrial Hygiene Conference & Exposition (AIHce), Atlanta, GA. 2004

"Can Loggers Understand Degraded Warning Labels?" Council on Forest Engineering (COFE) 2004 Annual Meeting. Hot Springs, AR. April, 2004.

"Developing and Evaluating Warnings for Recreational Products." Defense Research Institute (DRI) Product Liability Conference. New Orleans, LA. February 2004.

"Equipment Warning Signs and Symbols." Alabama Cooperative Extension's 2003 Professional Logging Managers (PLM) Continuing Education Satellite Broadcast. Auburn, AL. July 24, 2003.

"The Use of Interactive Evolutionary Design (IED) to Facilitate Workplace Hazard Communication." IEC Workshop at Genetic and Evolutionary Computation Conference (GECCO) 2003. Chicago, IL. July 12, 2003.

"Current Status of Warning-Systems in Forest Harvesting Equipment." National Occupational Research Agenda (NORA) Symposium 2003: "Working Partnerships Research to Practice." Washington, D.C. June 23, 2003.

"How Deteriorated are Warnings Associated with Forest Harvesting Equipment?" Invited Presentation to the Society of Automotive Engineers (SAE) Committee on Forest Harvesting Equipment. Eugene, OR. February 19, 2003.

"Warning Design & Development: A Human Factors Perspective." Key Note Address of the Web Sling and Tie Down Association (WSTDA) Spring 2001 Meeting. San Antonio, TX. March 14, 2001.

FCA Ex E.0018

## TESTIMONY OFFERED BY DR. NATHAN DORRIS
### OVER THE PAST FOUR YEARS

| Style | Court | Cause # | Depo/Trial |
|---|---|---|---|
| **2013** | | | |
| Key v. Lannam & Kemp-Barclay & Company | Broward County, FL | | Depo |
| Sanders v. Honeywell Inc., et al | Brazoria County, Texas | | Depo |
| Murphy Hooded Warehouse v. NACCO, et al | Red River Parish, LA | | Depo |
| Bonar v. BASF Corporation | Los Angeles County Superior Court | | Depo |
| Hornaugh v. Ottenga Hrk, Inc., et al | State Court of South Carolina | | Depo |
| State Farm Fire & Casualty Co. (Welsh) v. Ford | USDC Western District of Washington | | Depo |
| Mejia v. Honda, et al | Los Angeles County Superior Court, California | | Depo |
| Messinger v. Toyota Motor Sales, U.S.A., et al | USDC Southern District of W. VA, Charleston Div | | Depo |
| Plummer v. Terry Corporation, et al | US District Court Eastern Dist. of AR, Helena Div | | Depo |
| Pennock v. GM | Superior Court of AZ for Navajo County | | Depo |
| Amant v. Lowe's Home Centers, Inc., et al | USDC District of South Carolina Anderson Div | | Depo |
| Brown v. Herbst Freight Food USA, Inc | Circuit Court of Polk County, Missouri | | Depo |
| Williams v. Huston Douglas, Inc., et al | Gwinnett County, Georgia | | Depo |
| Mackie, Jr. v. Terex Corporation, et al | USDC Dist. of South Carolina Anderson/Greenwood Div | | Depo |
| Hale v. York International Corporation | Arizona Superior Court, Pima County | | Depo |
| Moorer v. Rocky Creek Lumbar Company, et al | Monroe County, Alabama | | Depo |
| Jones v. Exmark | U.S. District Court, Northern District of Alabama | | Depo |
| Underhill v. Freeman | U.S. District Court, Southern Illinois | | Trial |
| Soderman v. Toyota | Galveston County, TX District Court | | Depo |
| Walden v. Chrysler Group, LLC, et al | Superior Court of Decatur County, State of Georgia | | Depo |
| Phillips v. Century, LLC | Superior Court of EA, Ventura County, East County | | Depo |
| Salter v. Bridgestone Americas Tire Operations | Circuit Court for Montgomery County Alabama | | Depo |
| Semanov Aceves v. Honda Motor Co., et al | District Court of Cleveland County, Oklahoma | | Depo |
| Williams v. The Cultivian Company, Inc. | U.S. District Court, Northern District of Alabama | | Depo |
| Neato v. Ford Motor Company | USDC Southern District of W. VA, Huntington Div | | Depo |
| | | | |
| **2015** | | | |
| Gregory v. Kasi Walther GmbH & Co. Kr., et al | US District Court for the Western District of UK | | Depo |
| Evans v. NACCO | Circuit Court for the City of Roanoke, VA | | Depo |
| Peterson v. Warren Engineering Company, Inc., et al | Circuit Court of Madison County, Alabama | | Depo |
| Johnston v. Scholl Compressors, LLC, et al | District Court, Tarrant County, TX | | Depo |
| Gunter v. Tara Manufacturing, Inc., et al | Greenwood County, South Carolina | | Depo |
| Ninore v. Ford Motor Company | USDC Southern District of W. TA, Huntington Div | | Trial |
| Xoar v. Springs Window Fashions, LLC, et al | Middlesex County, New Jersey | | Depo |
| Kirby v. Safranski, LLC, et al | Calhoun County, Alabama | | Depo |
| Ruiz v. Kai Mason America, Inc. | District Court of Dallas County, TX | | Depo |
| Gieira v. Tree Star Manufacturing, Inc | USDC Southern District of Alabama, Southern Div | | Depo |
| Velasco v. NACCO | Superior Court of Los Angeles County | | Depo |
| Roske v. Wal-Mart Stores, Inc., et al | US District Court, Southern Dist. of FL, Pensacola Div. | | Depo |
| Sterecky v. Siesk | Superior Court of Alameda County, CA | | Depo |
| Petru v. Bayou Products Company | Circuit Court of Cook County, Illinois | | Depo |
| Holt v. Goodyear Tire & Rubber Company, et al | Superior Court of Maricopa County, Arizona | | Depo |
| Montgomery v. Home Depot, et al | Southern District of the United States District Court | | Depo |
| Johnson v. Scroll Compressors, LLC, et al | District Court, Tarrant County, TX | | Trial |
| Harper v. York International Corporation, et al | Superior Court of California, County of Los Angeles | | Depo |
| Billingsley v. Hubbell, Inc., et al | Circuit Court of St. Clair County, Alabama | | Depo |
| Moody v. Stop-Tech, et al | Circuit Court of Jackson County, Missouri at Kansas City | | Depo |
| Shonson v. Anvil | Superior Court of Middlesex County NJ | | Depo |
| Shaw v. Yamaha Motor Corporation, U.S.A., et al | Greene County, Missouri | | Depo |
| Com Ag Amerin v. Ogate of Corporation, et al | Knox Circuit Court, KY | | Depo |
| | | | |
| **2016** | | | |
| Gardner v. Textron, Inc., et al | State Court of Fulton County, Georgia | | Depo |
| Taub v. Pirelli Tire, LLC, et al | Superior Court of the State of AZ, County of Maricopa | | Depo |
| Lannerslev v. Polaris Industries, Inc | U.S. District Court, Northern District of New York | | Depo |
| Tyler v. American Optical Corporation, et al | Superior Court of the State of CA, County of Los Angeles | | Depo/Trial |
| Marker v. Yamaha, et al | US District Court, Middle District of FL, Orlando Division | | Trial |
| Campbell v. Polaris | U.S. District Court, Western Texas District | | Depo/Trial |
| Villa v. Honda, et al | Circuit Court of the 9th Judicial Circuit, Osceola County, FL | | Depo |
| Gowdey v. GE Industrial Services, et al | US District Court, Eastern District of Louisiana | | Depo |
| Jenks v. Ford | Circuit Court of Floyd County, Virginia | | Depo |
| Hackerson v. Yamaha | USDC District of South Carolina, Anderson Division | | Depo |
| Sutoher v. American Honda Motor Co., Inc | 21st Judicial District Ct., Parish of Livingston, State of LA | | Depo |
| Shonson v. Anvil | Superior Court of Middlesex County, NJ | | Trial |
| Fan v. General Motors LLC and Atlanta Auto Brokers | State Court of Cobb County, State of Georgia | | Depo |
| Johnson, Paul v. Ford Motor Company | Scott County, Minnesota | | Depo |
| Robinson v. Chrysler Group, LLC | 9th Judicial District Court, Parish of Baton Rouge, LA | | Depo |
| Wright v. Marion Equipment Co., et al | Leonardo County, Alabama | | Depo |
| Kjerler v. Husqvarna | Eau Claire County, Wisconsin | | Depo |
| Dover v. Mazda, et al | Fulton County, Georgia | | Depo |
| Rodriguez, et al v. Worthington Cylinder, et al | Clark County, Nevada | | Depo |
| Hutchins v. Makita Motors, Inc | Circuit Court of Jefferson County, Arkansas | | Depo/Trial |
| Leblanc v. Polaris Industries, Inc | US District Court Southern District of Texas, Dallas Division | | Depo |
| Gaddy v. Terex | US District Court, North Georgia, Atlanta Division | | Depo |
| Williams v. Manitowoc Cranes, LLC | USDC for South in District of MS, Southern Division | | Trial |
| Ruggeri v. Yamaha | US District Court, New Jersey | | Depo |
| Williams v. Idral Industries Inc | Circuit Court of Anderson County, Arkansas, Southern District | | Depo |
| Williams v. Idral Industries Inc | US District Court North of Georgia, Atlanta Division | | Depo |
| Swatley v. Chrysler | Summit County, Ohio | | Depo |

FCA Ex E.0019

| Style | Court | Cause # | Depo/Trial |
|---|---|---|---|
| **2017** | | | |
| Wrightt v. Altran Equipment Co., et al. | Lowndes County, Alabama | 11-943494 | Trial |
| Estevez v. Bridgestone, et al. | 107th Judicial District Court of Cameron County, Texas | 2012-DCL-5269-A | Depo |
| Burman v. Ford Motor Company | U.S. District Court, Southern District of Ohio, Western Div. | 2:16-CV-4xxxx | Depo |
| Thomas v. Toyota Motor Sales, USA, Inc. | U.S. District Court, District of South Carolina, Greenville Div. | 6:14-cv-01xxx-00111 | Depo |
| Ingram v. Midwest Aerials, et al v. Grove, et al. | 21st Judicial Circuit Court, Jefferson Co., MO | 12JE-CC00793 | Depo |
| Chau v. Siemens | Harris County, Texas | 2015-19369 | Depo |
| Garca v. Omega Flex, Inc. | U.S. District Court, District of Connecticut | 3:15-cv-00561 | Depo |
| Ferguson v. Walmart Stores, Inc., et al. | Circuit Court of Sebastian County, Arkansas | CV-43-0305 | Depo |
| Girard v. Omega Flex, Inc. | U.S. District Court, Eastern District of Michigan | 1:16-cv-12227-TLL-PTM | Depo |
| Moundy v. York International Corporation, et al. | 19th Judicial District Court for the Parish of E. Baton Rouge, LA | C649647 | Depo |
| Contreras v. Polaris Industries, Inc. | U.S. District Court, Northern District of New York | 6:14-CV-4918 (GTS)-TWD | Trial |
| Mullin v. Sergers Canada, Inc., et al. | Barnwell County, South Carolina | 2016-CP-06-00091 | Depo |
| Mammo v. Worthington Cylinder Corporation, et al. | U.S. District Court, Central District of California | CV-16-00014-JAK | Depo |
| Dominguez, et al. v. Jiaxi Cruz ℞/℞ x R & J, et al. | Webb County, TX | 2013-CVT-001381-D2 | Depo |
| Colten, et al. v. SMAC, et al. | U.S. District Court, Eastern District Missouri Southeastern Division | 1:16-cv-1251 | Depo |
| Stockton v. CNH America LLC | U.S. District Court, Northern District of Oklahoma | 8-CV-4564-chP-TTW | Depo |
| Morales v. Tire Company | Court of Common Pleas for the Fourth Judicial Circuit | 2015-CP-13-646, 2316-CP-13-016 | Depo |
| | | | |
| **2018** | | | |
| Ruggiero v. Yamaha | U.S. District Court, New Jersey | 1:15-cv-06949-JBS-KMW | Trial |
| Canty v. Yamaha Motor Corporation, U.S.A., et al. | U.S. District Court, Northern District of Georgia Atlanta Division | 1:16-cv-2915 | Depo |
| Jackson, et al. v. E-Z-Go Division of Textron Inc. | Jefferson, KY Circuit Court | 11-CI-01871 | Depo |
| Parada v. Beach Technology Corp | U.S. District Court, Eastern District of Missouri Eastern Division | 4:16-cv-1231 | Depo |

FCA Ex E.0020



1075 Peachtree Street, NE  Suite 3750  Atlanta, GA 30309  **P** 770.487.2138

## *2018 Consulting Rate and Fee Schedule*

### Consulting Rate Schedule

Unless otherwise agreed in advance, Dorris and Associates International, LLC charges an hourly rate for time incurred on all projects.  Our time is billed in one-tenth hour increments and is billed at the following hourly rates:

#### 2018 Hourly Rates

| | |
|---|---|
| Dr. Alan L. Dorris | $ 625 |
| Dr. Nathan T. Dorris | $ 385 |
| Dr. Eric Boelhouwer | $ 240 |
| Associate Consultants | $ 175 |
| Information Specialists | $ 175 |
| Research Assistants | $ 155 |
| Other Support Staff | $  85 |

DAI's consulting rates are adjusted annually and are effective as of January 1st.

### Additional Fees

Where applicable, an Archival Storage Fee of $100 is charged if a case must be retained after closing for any significant amount of time.  This fee covers archival storage charges and any future shipping and/or destruction of file materials.  Additionally, there is a Literature Search fee of $325 that is billed for any month in which significant literature search resources are expended.

### Project Expenses

All expenses will be billed at DAI's cost and are payable at time of receipt.  Receipts will be provided for any outside charges over $50.

### Payment Terms and Conditions

Dorris and Associates International will issue monthly invoices for any case that has had significant activity during the month.  Cases that have had minimal or no activity may not be invoiced for that month.  Payment is due upon receipt and invoices that are more than thirty (30) days outstanding are subject to a 1.5% per month charge.

In retaining the services of Dorris and Associates International, LLC you agree to ensure that all invoices are paid fully and promptly whether by your firm, your client, or another party. If there are multiple approved parties splitting the cost of our services, the initial retaining client (person the invoice is addressed to) shall be responsible for ensuring that timely payment is made by all other parties.

FCA Ex E.0021