## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CURTIS RAY WEAMS, JR.** | **CIVIL ACTION NO.: 3:17-cv-4** |
| **VERSUS** | **JUDGE: Shelly D. Dick** |
| **FCA US L.L.C.** | **MAGISTRATE: Richard L. Bourgeois, Jr.** |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF
### WILLIAM J. VIGILANTE, JR., PhD, CPE

Plaintiffs respectfully submit this Memorandum in Opposition to FCA US L.L.C.'s Motion to Exclude the Testimony of William J. Vigilante, Jr. PhD, CPE.  Based on his education and training as an human factors and ergonomics expert, and his experience and expertise in psychology and ergonomics, Dr. Vigilante was tasked with providing an opinion relative to the sufficiency of warnings related to the airbags in the 2004 Jeep Liberty at issue ("vehicle at issue"), and specifically whether the manufacturer sufficiently warned users of the risk of inadvertent airbag deployment.

### BACKGROUND

Dr. Vigilante received his Ph.D. in psychology and ergonomics from North Carolina State University in 2001 and is board certified in Professional Ergonomics.  He has over 22 years of experience in the researching, designing, and evaluating driver performance, roadway safety, pedestrian safety, control-display design, consumer and commercial products and equipment, safety and hazard analyses, risk perception and design of warnings and instructional materials.[1] His professional experience listed on his curriculum vitae shows an extensive background in evaluating and analyzing consumer warnings.

---

[1] Exhibit 1. Vigilante's CV

## LAW

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.[2] Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702."[3] A number of nonexclusive factors may be applicable to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.[4] The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant."[5] With respect to the determination of relevancy pursuant to Rule 702 and *Daubert*, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue."[6]

---

[2] Fed.R.Civ.P. 702; see *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).
[3] *Pipitone v. Biomatrix, Inc*., 288 F.3d 239, 243 (5th Cir. 2002).
[4] *Id.* (emphasis added).
[5] *Guy v. Crown Equip. Corp*., 394 F.3d 320, 325 (5th Cir. 2004); *Runnels v. Texas Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test… a trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'") (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 150 (1999)).
[6] *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

To qualify as an expert, "the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth."[7] Additionally, Rule 702 states that an expert may be qualified based on "knowledge, skill, experience, training, or education."[8] "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[9]

However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[10] "A lack of specialization should generally go to the weight of the evidence, rather than its admissibility."[11] "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[12] "Thus 'an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight.'"[13]

Federal district courts have "wide latitude in determining the admissibility of expert testimony…"[14] The "decision to admit expert testimony will not be disturbed absent an abuse of discretion."[15] The trial court's role as a gatekeeper is "not intended to serve as a replacement for the adversary system: "'Vigorous cross-examination, presentation of contrary evidence, and

---

[7] *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

[8] *Hicks*, 389 F.3d at 524; see also *Kumho Tire Co.*, 526 U.S. at 147 (discussing witnesses whose expertise is based purely on experience).

[9] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

[10] *Id.* (citing *Daubert*, 509 U.S. at 596).

[11] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013).

[12] *Id.* (quoting *Daubert*, 509 U.S. at 596).

[13] *Id.* (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)).

[14] *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997).

[15] *Carroll v. Morgan*, 17 F.3d 787, 789 (5th Cir. 1994).

careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."'[16] "The *Daubert* analysis should not supplant trial on the merits."[17] Rather, "[t]he focus … must be solely on principles and methodology [of the expert witness], not on the conclusions that they generate."[18]

## ARGUMENT

### 1. Mr. Vigilante is Qualified.

"Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."[19] "A lack of specialization should generally go to the weight of the evidence, rather than its admissibility."[20] "[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[21] "Thus 'an expert witness is not strictly confined to his area of practice, but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight."'[22]

FCA is critical of the fact that Mr. Vigilante hasn't participated in warnings systems work for any auto manufacturer or specifically designed an airbag warning. FCA is free to argue this and cross examine Dr. Vigilante on these issues as it goes to the weight of the evidence not the admissibility. It is clear that Dr. Vigilante has extensive experience and knowledge with regard to warnings and human factors which relate directly to the issues involved herein.

---

[16] *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 562 (5th Cir. 2004) (quoting *Daubert*, 113 S.Ct. at 2798).

[17] *Mathis v. Exxon Corp*., 302 F.3d 448, 461 (5th Cir. 2002).

[18] *Watkins*, 121 F.3d at 989.

[19] *Id.* (citing *Daubert*, 509 U.S. at 596).

[20] *United States v. Wen Chyu Liu*, 716 F.3d 159, 168 (5th Cir. 2013).

[21] *Id*. (quoting *Daubert*, 509 U.S. at 596).

[22] *Id.* (quoting *Wheeler v. John Deere Co*., 935 F.2d 1090, 1100 (10th Cir. 1991)).

In the case of *Durkin v. Wabah Nat'l*, 2013 U.S. Dist. LEXIS 44467 (D.N.J. March 28, 2013), an expert was allowed to testify in a product liability case involving a tractor-trailer loaded with a steel load that shifted forward during braking, which collapsed the bulkhead of the truck killing the plaintiff. The court reasoned that his lack of knowledge of trucking specifics was not fatal in light of Fed. R. Evid. 702 and the accompanying advisory committee notes making it clear that various kinds of 'knowledge, skill, experience, training, or education' qualify an expert as such.

In the case of *Jenks v. N.H. Motor Speedway*, 2012 U.S. Dist. LEXIS 15084 (D.N.H. February 8, 2012), Mr. Vigilante considered established standards and guidelines for product warnings, as well as human factors literature and his own extensive experience and training in human factors analysis, in the context of a product liability case. Specifically, he determined that a manufacturer's warnings did not meet the American National Standards Institute ("ANSI") guidelines for "products safety signs and labels" and was inconsistent with criteria set forth in various articles and literature on adequate product warnings. The court in *Jenks* properly concluded that such opinions go beyond the mere "ipse dixit of the expert," and are sufficiently reliable to survive a *Daubert* challenge.

## 2.  Dr. Vigilante's Methodology.

Dr. Vigilante reviewed all available manufacturer's literature that containing warnings associated with the use of a 2004 Jeep Liberty. He also reviewed and evaluated the established facts leading to the inadvertent airbag deployment experienced by Mr. Weams. Having availed himself of the available information, he conducted research to determine the applicability of industry standards and legal requirements imposed on manufacturers with respect to automotive warnings. Only after review of the relevant material did he offer an opinion as to the sufficiency

of warnings in this matter.   Under the circumstances of this case, he can only review material, apply his knowledge and experience and offer an opinion.   The methodology is quite simple and he followed appropriate methods in reaching his conclusions.

Mr. Vigilante's opinions are based upon standards promulgated by the ANSI, an independent organization that oversees the development of safety guidelines which "are widely-accepted through the United States and internationally as an authoritative source for safety compliance." *Nat'l Sur. Corp. v. India Tea and Spices, Inc.*, 2012 U.S. Dist. LEXIS 3928, 2012 WL 113608 (D. Mass. Jan. 12, 2012).   On that basis, the court in *Jenks* found that his conclusions were based on material that meets the "peer review or publication" prong of *Daubert*.   Regardless, even if his opinion was not based on such material, peer review is not "a sine qua non of admissibility." *Granfield v. CSX Transp., Inc.*, 597 F.3d 474, 486 (1st Cir. 2010).   It concluded further that the theories and methods relied upon by Mr. Vigilante are recognized in his field, and his knowledge of warnings and their proper design may be helpful to the jury.

Mr. Vigilante's opinions regarding the inadequacy of FCA's visual and audible warning system on the instrument panel are contained squarely within his initial report of February 15, 2018.    In this case, Mr. Vigilante noted that the information and warnings Chrysler (FCA) provided in its Jeep's manual indicate that the owner/operator **will be notified** if there is a problem with the airbag or its controller.   For example, the Jeep manual states that if the ORC detects a malfunction in **any part** of the system, it turns on the AIRBAG warning light either momentarily or continuously.   Mr. Vigilante opined that given the information in the manual, it would be reasonable for owners and operators not to expect that the airbag could inadvertently deploy and that there is no problem with the airbag system if the airbag indicator light continues to work properly.   Chrysler's failure to provide an effective warning system deprived owners of the Jeep

Liberty, such as Mr. Weams, with the information needed to identify the hazard and how to avoid it. More specifically, Chrysler's failure to comply with American National Standards Z535.4 deprived users of the protection afforded to the public by those guidelines and standards.

Mr. Vigilante's assessment process regarding the Jeep Liberty's airbag warning system followed scientific methodology by forming a hypothesis, namely; to determine if the manufacturer provided adequate warning regarding the potential for the airbag to spontaneously deploy. (Exhibit 2. Vigilante report, Page 2, February 15, 2018). He identified relevant scientific and professional principles, theories and methods and collected data relevant to the hypotheses. He cited a total of seven different references relied upon at Page 14 in his report. Dr. Vigilante analyzed the data contained in the Jeep's manual and on the vehicle itself in arriving at the conclusions properly supported in his report. FCA's challenges to the opinions offered center not on the fact that these steps were taken by Dr. Vigilante, but rather on limitations imposed by FMVSS 208 pertaining to the warnings on the sun visor. Such an attack is for cross-examination. *Daubert*, 509 U.S. at 596.

### 3. Addendum Report by Mr. Vigilante.

Mr. Vigilante produced an addendum report that was provided to defense counsel prior to Mr. Vigilante's deposition. The addendum was in rebuttal to defense expert's reports and absolutely no prejudice resulted from any claim that the addendum was dilatory. If it was dilatory, it was through no fault of Mr. Vigilante that the addendum was not provided earlier, as that responsibility fell to Mr. Weams' counsel. Still, no harm resulted as Mr. Vigilante simply clarified a limited and specific issue contained in his report. Mr. Vigilante was subject to questioning during his deposition as to the basis for the addendum and the bases for all of his opinions. The fact remains that FCA did not warn Mr. Weams that he was subjected to an inadvertent airbag

deployment any time he attempted to start his vehicle.  FCA knows this, anyone who hears about this case knows this and the timing of Dr. Vigilante's addendum does not change this fact.

The undisputed fact is that FCA did not warn Mr. Weams or anyone else that their airbag would, could or even might inadvertently deploy when the key was simply turned to the "ON" position.   Mr. Vigilante's opinions relate primarily to his proposed specific language and location of appropriate warnings under the circumstances.  These opinions cannot be attacked for failure to employ reliable methodology.   Mr. Vigilante relied upon established facts, considered those facts and rendered opinions based upon his experience and education.   That is what experts do.  FCA is free to cross examine him with respect to those opinions and the jury can determine if they will accept or reject the opinions.

## CONCLUSION

Defendant's complaint that Plaintiff's expert, William Vigilante fails to comply with rule 702 and *Daubert* and its progeny rings untrue, and Vigilante's report and testimony cannot be excluded on the grounds urged by Defendant's Motion.

**WHEREFORE**, Plaintiff prays that the Court deny Defendant's Motion, and for all other just and proper relief to which they may be entitled.

Respectfully submitted,

July 23, 2018                                    /s/ John H Smith
**DATE**                                         John H Smith, Bar Roll No.  23308
                                                 Loren D. Shanklin, Bar Roll No. 33366
                                                 Alicia M. Sosa, Bar Roll No. 34101
                                                 **SMITH SHANKLIN SOSA, L.L.C.**
                                                 16851 Jefferson Highway, Suite 5A
                                                 Baton Rouge, Louisiana 70817
                                                 Telephone: 225-223-6333
                                                 Facsimile: 888-413-8345

                                                  /s/ Gary M. Gaudin

Gary M. Gaudin,  Bar Roll No. #23089
Law Office of Gary M. Gaudin
712 N. Burnside Avenue
Gonzales, Louisiana 70737
Telephone No. (225) 644-5612
Fascimile (225) 644-5012

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 23, 2018, I electronically filed the foregoing with the

Clerk of Court by using the CM/ECF system, which shall send notification of such filing to all

attorneys of record.

/s/ John H Smith
John H Smith

9