# VIGILANTE FORENSIC
## Human Factors | Ergonomics Consulting

| | |
|---|---|
| **Report of:** | William J. Vigilante, Jr., PhD, CPE |
| **Date:** | February 15, 2018 |
| **Case Caption:** | Curtis Ray Weams, Jr.<br>v.<br>FCA US LLC |
| **VF Case Number:** | 17-182 |
| **Prepared for:** | John H. Smith, Esq.<br>Smith Shanklin Sosa, LLC<br>16851 Jefferson Highway<br>Suite 5A<br>Baton Rouge, LA 70817<br><br>Phone: (225) 223.6333<br>Email: john@smithshanklin.com |

200 Pembrooke Circle    Tel: 267.439.1551
Phoenixville, PA 19460    bill@vigilanteforensic.com
www.vigilanteforensic.com

A.     INTRODUCTION

On Saturday January 16, 2016, 31 year old, Curtis Ray Weams, Jr. was injured when the driver side airbag of his 2004 Jeep Liberty spontaneously deployed while it was parked in the yard of his home.  Weams lives at 41331 Highway 931, Gonzales, Ascension Parish, LA.  At the time of the incident, the vehicle was stationary and Weams was leaning through the driver door. When Weams turned on the ignition, the airbag deployed without warning.  The subject Jeep was manufactured by the Chrysler Group, LLC (Chrysler) which is currently known as FCA US LLC.

The purpose of my investigation was to determine if Chrysler provided adequate warning regarding the potential for the airbag to spontaneously deploy.

I have included an updated CV outlining my qualifications and a listing of my testimonies for the past four years within the Appendix section of this report.  Vigilante Forensic currently invoices my work associated with this investigation at a rate of $395.00 per hour.

I may use the following materials as exhibits to illustrate my testimony: photos taken of the subject Jeep Liberty; instructional material and manuals provided by Chrysler; examples of on-product warnings and indicator lights used on other products; example on-product warning as described in Section D-2 of this report; excerpts from the references and standards cited within this report; and any exhibit identified by any other party of testifying expert.


B.     AVAILABLE MATERIAL

- Plaintiff's Responses to Interrogatories and Request for Production
- FCA US LLC's:
    - Answer
    - Initial Disclosures
    - Initial Disclosure Statement
    - Responses to First Request for Admissions
    - Responses to First Set of Interrogatories
    - First Set of Request for Production
    - Responses and Supplemental Responses to Request for Production
    - Supplemental Responses to First Set of Request for Production
- Deposition transcripts of:
    - Angela Weams, dated 12/12/2017
    - Curtis R. Weams, Jr., dated 7/20/2017
- Various medical records
- Registration and insurance cards for subject vehicle
- Various record related to the subject vehicle provided by plaintiff
- Black and white digital copies of:
    - 23 photographs of the subject vehicle


VIGILANTE FORENSIC
Human Factors | Ergonomics Consulting

- o  1 photograph of the plaintiff
- Teleconference with Richard Hille on 2/9/2018

**C.      VEHICLE AND INCIDENT DESCRIPTION**

**Vehicle Description**

The subject vehicle is a 2004 Jeep Liberty LTD Edition 4x2 Sport UT manufactured by the Chrysler Group, LLC (Chrysler).  The VIN for the Jeep is: 1J4GK58K94W208774.  The Jeep is a four door sport utility vehicle with a six cylinder engine and 4 speed automatic transmission.  The Jeep was manufactured in December 2003.

The Jeep is equipped with driver and front passenger Supplemental Restraint Systems (SRS or airbags).  The driver's front airbag is mounted in and deploys from the steering wheel.  The front airbags have a multi stage inflator design that allows less forceful deployment under certain crash conditions.  The instrument panels possess multiple indicator lights including an airbag warning/status light that informs the operator if the SRS is functioning properly.

Chrysler provided an Operators/Owner's Manual with the Jeep.  The manual is 374 pages long and provides information on the features and controls of the vehicle.  Jeep also provided multiple warning stickers/decals in the cabin of the vehicle including warnings related to the airbag.  The airbag warning is located on the sun visors and address the hazards associated with allowing children to sit in the front seats.

**Weam's Ownership**

The Jeep is owned by Angela A. Weams (wife of Curtis Ray Weams, Jr.) (CRW, 13).  The Weams purchased the vehicle used and are the second reported owner of the Jeep (CRW, 48).   The Jeep was initially purchased in February 2004.  The Weams purchased the Jeep in August 2010 (CRW, 48).  The Jeep had approximately 64,000 miles on it when the Weams purchased it (CRW, 50).  At the time of the incident, the Jeep had approximately 115,000 miles on it (CRW, 68).

Curtis Weams testified that the Jeep was in good condition when they purchased it and that he is not aware of it being involved in any prior collision (CRW, 49).  However, Weams testified that his wife was involved in a little fender bender when someone rolled back into the Jeep while she was stopped in a parking lot (CRE, 141).  Weams testified that the crash created a little dent in the bumper and that the airbag did not deploy (CRE, 141).

The Weams used the Jeep as a family vehicle and had also owned two other Ford pickup trucks (CREW, 50,51).  Weams testified that he replaced the radiator, condenser, and thermostat himself on the Jeep prior to 2016 (CRE, 54,56).  Weams also testified that:

- A local garage also did work on the Jeep to replace the valve covers in 2014 (CRE, 56,57).



- He has the Jeep oil and filter changes done at local shops (CRE, 57,58).
- He had transmission replaced by a local shop (CRE, 58).
- He also had someone replace the front brakes on the Jeep (CRE, 59).
- He put a C-clamp on the water pump to hold the housing together because a bolt had broken off (CRE, 61-63).
- He had to use a cable lock to hold the C-clamp in place (CRE, 63,64).

Weams also testified that as of January 16, 2016 the Jeep's front power windows would not work (CRE, 64). Weams testified that on the day of the incident he was getting ready to take the Jeep to the shop to see why the windows would not work (CRE, 64,65). Weams also testified that other than the power windows he was not aware of any other problems with the Jeep (CRE, 65).

Weams testified that he is not sure if the Owner's Manual came with the Jeep when they bought it (CRE, 65-67). From August 2015 to January 16, 2016, Weams had parked the Jeep under a tree at his house and had not moved it (CRE, 69,70). Weams stopped driving the Jeep when his tags were up and that he could not get it inspected because the windows did not work (CRE, 67,68). Weams testified that as of August 2015, the Jeep ran good and was reliable (CRE, 67,69).

Weams had started the Jeep on approximately three occasions while it was parked under the tree (CRE, 70). Weams testified that he did not have any problems starting the Jeep and that he did not notice anything unusual about the Jeep when he started it on those occasions (CRE, 70,71). Weams also testified that when he started the Jeep there were no indicator lights illuminated on the instrument panel except for the tire pressure sensor (CRE, 71). Weams left the Jeep in park each time he started it while it was parked under the tree (CRE, 71).

**Incident Description**

Curtis Ray Weams, Jr. (Curtis Weams) lives with his wife, Angela, and children in a single family home located at 41331 Highway 931, Gonzales, LA since 2014 (CRW, 12-15,24,132).

On January 16, 2016, Curtis Weams moved the Jeep from under the tree for the first time since August 2015 (CRW, 70-72). Weams testified that he started the Jeep and moved it from under the tree to under his carport (CRE, 72-74). Weams testified that he did not notice anything unusual about the Jeep when he started it (CRE, 73). After parking the Jeep under the carport, Weams turned it off and ran a few errands (CRE, 74,75). When he returned later in the day, Weams checked and filled the fluids in the Jeep to get it ready to take it to the shop to get the windows fixed (CRE, 74-76). Weams testified that he left the Jeep's hood up after filling the fluids and walked over the driver's door (CRE, 77). While standing outside the Jeep, Weams leaned in across the steering wheel to start the vehicle (CRE, 77,78).

Weams testified that as he leaned into the vehicle to start it his left hand was on the steering wheel and that he put the key into the ignition with his right hand (CRE, 78). Weams testified



that as he turned the key the airbag deployed (CRE, 78,79,81,83).  Weams testified that it happened quickly (CRE, 81).  Weams was injured in the incident.

Weams testified that he does not recall the engine starting up or the radio coming on (CRE, 78-80).  Weams testified that he heard the horn after the airbag deployed (CRE, 78,81).  Weams also testified that after the airbag deployed he did not turn the key off and that the engine was not running (CRE, 80).  Sometime after the incident, Weams sent a letter to Chrysler notifying them of the incident (CRE, 87).  Weams testified that prior to the incident he never received any correspondence from Chrysler regarding the Jeep (CRE, 131).  However, Weams did recall receiving a notice from Chrysler regarding a voluntary recall involving a tow hitch (CRE, 131,132).

### D.    ANALYSIS

**D.1. Chrysler failed to provide adequate warning.**

Chrysler designed the Jeep's airbag system to deploy during moderate to severe frontal collisions.  The airbags are not designed to deploy while the vehicle is stationary and is not involved in a collision.

Airbags are designed to quickly deploy in the event of a moderate to severe crash.  Given the speed and force necessary to deploy an airbag when needed it has the potential to cause injury when it deploys.  For example, the Jeep manual states:

> The nylon airbag material may sometimes cause abrasions and/or skin reddening to the driver and front passenger as the airbags deploy and unfold.  The abrasions are similar to friction rope burns or those you might get sliding along a carpet or gymnasium floor.  They are not caused by contact with chemicals. They are not permanent and normally heal quickly.

The risk of injury during airbag deployment increases if the driver is out of position (i.e., seated fully in the driver's seat about arm's length from the steering wheel).  For example, Chrysler provides the following warning in the Jeep's manual:

- Being too close to the steering wheel or instrument panel during airbag deployment could cause serious injury.  Airbags need room to inflate.  Sit back, comfortably extending your arms to reach the steering wheel or instrument panel.
- If the vehicle has window bags, they also need room to inflate. Do not lean against the door or window.  Sit upright in the center of the seat.

Curtis Weams was injured when the driver side airbag of the 2004 Jeep Liberty spontaneously deployed without warning.  Richard Hille concluded that the inadvertent airbag deployment was likely caused by a defect in the circuit board of the airbag controller.  The inadvertent



deployment of the Jeep's airbag creates a hazard to front seat occupants who are unaware of, unprepared for, and out of position during the deployment.

The hazard created by the inadvertent deployment of the airbag is latent and hidden hazard. For example, the subject Jeep Liberty was over 12 years old before the airbag inadvertently deployed. Furthermore, Curtis Weams testified that prior to the incident there was no indication that there was anything wrong with the vehicle (except for the power windows) or airbag (CRW, 65).

**Failure to warn**

Warnings are a means of delegating the responsibility for product's safety to the user in situations where hazards cannot be designed out or adequately guarded (1-3). For this reason warnings need to be effective in alerting and informing the user of the hazard and motivating them to act and behave in a safe fashion (2,4,5). The effective communication of warnings is also necessary so that the user can make an informed decision with regard to the product's use and the risks associated with the product's reasonably foreseeable misuse (1-5).

If it chose not to address the potential defect by design or guarding alternatives, the least Chrysler should have done was provided an effective warning system to alert and inform owners and drivers of the inadvertent airbag hazard and how to avoid it (1-5). For example, with respect to product safety, the National Safety Council[1] advises within its *Accident Prevention Manual for Business and Industry* (1):

> It is not enough to design and make a satisfactory product; an organization must also label its products correctly and warn potential customers and users of any dangers involved. … Therefore, a company must not only give clear instructions on how to use the product but also must provide specific warnings about any dangers or possible misuse that could result in injury. … For a warning to be considered adequate, it must advise the user of the following:
>
> - Hazards involved in the product's use
> - How to avoid these hazards
> - Possible consequences of failing to heed these warnings.
>
> All warnings should be designed to comply with the requirements of ANSI Z535.4 1991, the ANSI standard for product safety signs and labels.

ANSI Z535.4-2002, American National Standards for Product Safety Signs and Labels (6):

---

[1] The NSC is a nonprofit federally chartered organization founded in 1913 and is the premier source of safety and health information in the United States. The NSC mission is to educate and influence society to adapt safety policies, practices, and procedures that prevent and mitigate injury from preventable causes (2).



Case 3:17-cv-00004-RLB   Document 46-2   07/23/18   Page 7 of 15

… sets forth performance requirements for the design, application, and use and placement of safety signs and labels intended to identify potential hazards for persons using, operating, servicing, or in proximity to, a wide variety of products.

ANSI Z535.4-2002 notes that (6):

This standard provides guidance for manufacturers, …, and others who have a desire to alert persons to potential personal injury hazards associated with products.

With respect to the placement of product safety signs and warnings, ANSI Z535.4-2002 requires (6):

Product safety signs and labels shall be placed such that they will: (1) be readily visible to the intended viewer and (2) alert the view to the potential hazard in time to take appropriate action.

With respect to the purpose of product warnings, George Peters notes in his 1984 paper published in the journal Professional Safety (5):

The ultimate purpose of a warning is to give a foreseeable or prospective victim a fair opportunity to avoid personal harm.  The warning should signal and capture the attention of those who may be harmed, it should communicate meaningful information regarding the specific mechanism and mode of injury, and it should give instruction on how to avoid injury or minimize any adverse consequences.  Warnings are in the nature of informed consent," where new information or reminders can be provided concerning significant hidden and obvious hazards and thus provide some reasonable assurance that any contact with an appreciable source of harm will be a consenting or voluntary encounter with risks about which the possible victim has been informed.

In the same article, Peters also notes (5):

It is unfair to permit injuries to occur to unsuspecting individuals, if a simple warning about a hidden hazard would alert them and result in injury-avoiding behavior.

Consistent with Peter's treatise on the purpose of a warning, Laughery and Hammond note the following purposes of a warning in the introductory chapter to the textbook *Warnings and Risk Communication* (2):

Most generally, warnings are intended to improve safety, i.e., to eliminate or reduce incidents that result in injury, illness or property damage … At a different level, warnings are intended to influence people's behavior in ways that will improve safety … At still a third level, warnings are intended to provide information that enables people to



understand hazards, consequences and appropriate/inappropriate behaviour which, in turn, enables them to make informed decision.

Laughery and Hammond also provide the following guidelines of when to provide a warning (2):

There are several principles or rules that guide when a warning should be employed. They include: (i) a significant hazard exists, (ii) the hazards, consequences, and appropriate safe modes of behavior are not known by the people exposed to the hazards; (iii) the hazards are not open and obvious; and (iv) a reminder is needed to assure awareness of the hazard at the proper time.

Within his *Product Safety Engineering for Managers*: *A Practical Handbook and Guide* textbook, Matthiew Seiden notes (3):

If you can't guard the hazard, warn or instruct the user as to the dangers of the product under reasonably foreseeable conditions of service and commerce.

Consistent with Seiden's guidance, Sanders and McCormick note in their textbook Human Factors in Engineering and Design (4):

There are three basic approaches for making a product safer:

- Design the dangerous feature out of the product.
- Protect against the hazard by guarding or shielding.
- Provide adequate warnings and instructions for proper use and reasonable foreseeable misuse.

In general, designing the dangerous feature out of a product is the most effective means of making the product safer.  Often, however, it is not possible or economically feasible to do that.  In such cases guarding and shielding should be implemented where possible. Warnings should be considered after the first two design methods have been applied and where unreasonable dangers still exist.

Contrary to applicable safety standards and guidelines, Chrysler failed to provide any warning in the Jeep's manual or on an in-vehicle safety decal related to the potential for inadvertent deployment of the airbag.

Chrysler's failure to provide any warning regarding the potential inadvertent deployment of the airbag deprived owners and operators of the information they need to understand and appreciate that the airbag could deploy suddenly, inadvertently, and without warning at any time.  Chrysler's failure to provide any warning regarding the hazard also deprived owners and operators of the information they needed to avoid injury should the airbag inadvertently deploy (e.g., always remain properly position in the driver's seat when turning the ignition;



release the accelerator and slowly come to a controlled rest if the airbag deploys while moving).

**Conflicting information**

The information and warnings Chrysler provided in its Jeep's manual indicate that the owner/operator will be notified if there is a problem with the airbag or its controller.

According to the Jeep manual, the airbags are controlled by an Occupant Restraint Controller (ORC). The ORC determines if the frontal collision is severe enough to require the airbag(s) to deploy and the rate of inflation. The Jeep manual also notes that:

> The ORC monitors the readiness of the electronic parts of the system whenever the ignition switch is in the START or RUN positions. These include all of the items listed above except the steering wheel and column, and knee bolsters. If the key is in the OFF position, in the ACC position, or not in the ignition, the airbags are not on and will not inflate.

As note above the instrument panel possess an airbag warning/indicator light that informs the operator if the SRS is functioning properly. For example, the Jeep manual states:

> Also, the ORC turns on the AIRBAG warning light and PAD indicator light in the instrument panel for 6 to 8 seconds for a self-check when the ignition is first turned on. After the self-check, the AIRBAG warning light will turn off. The PAD indicator light will function normally (Refer to "Passenger Airbag Disable (PAD) Indicator Light" in this section). If the ORC detects a malfunction in any part of the system, it turns on the AIRBAG warning light either momentarily or continuously. A single chime will sound if the light comes on again after initial start up.

The Jeep also provides the following warning related to the Airbag warning light:

> WARNING!
> Ignoring the AIRBAG warning light in your instrument panel could mean you won't have the airbags to protect you in a collision. If the light does not come on, stays on after you start the vehicle, or if it comes on as you drive, have the airbag system checked right away.

Within the Instrument Panel section of the manual, Chrysler notes:

> **24. Airbag Warning Light**
> This indicator lights and remains lit for 6 to 8 seconds when the ignition is first turned on. If the light doesn't come on, stays on, or comes on while driving, have the airbag system checked by an authorized dealer.



Chrysler designed the airbag to be maintenance free and provided the indicate light to alert drivers if there is a problem. For example, Chrysler states in the Jeep's manual:

> **Airbag Warning Light**
> You will want to have the airbag system ready to inflate for your protection in an impact. The airbag system is designed to be maintenance free. If any of the following occurs, have an authorized dealer service the system promptly:
>
> - Does not come on during the 6 to 8 seconds after the ignition switch is first turned on
> - Remains on after the 6 to 8 second interval.
> - Comes on for any period of time while driving.

The information Chrysler provided in the Jeep's manual and airbag indicator inform the user that (a) the ORC monitors the airbag system for any problems, (b) if there is a problem with the airbag system, the airbag indicator will alert them, and (c) there is no maintenance needed for the airbag system.

Given the information Chrysler provided in its manual, it would be reasonable for owners and operators not to expect that the airbag could inadvertently deploy and that there is no problem with the airbag system if the airbag indicator light continues to work properly.

Contrary to contemporary safety standards and guidelines, Chrysler failed to provide any warning with the subject Jeep Liberty to alert owners and/or operators that the airbag system can inadvertently deploy. On the contrary, the information and warnings Chrysler provided inform users that they will be alerted to a problem with the airbag.

Chrysler's failure to provide an effective warning system deprived owners and operators of the Jeep Liberty, such as Curtis Weams, with the information they needed to identify the hazard and how to avoid it. For example, Curtis Weams testified that prior to the incident the airbag indicator light did not stay on after starting the vehicle.

Chrysler's failure to provide an effective warning system regarding the hazard associated with inadvertent deployment of the airbag was improper, rendered the subject Jeep Liberty defective and unreasonably dangerous, and unsafe for its intended use and caused Curtis Weams injury.

Chrysler failure to comply with long known applicable guidelines, practices, and the American National Standards Z535.4 deprived users of the protection afforded to the public by those guidelines and standards.



**D.2.  Effective warning.**

Chrysler should have addressed the defect in its 2004 Jeep Liberty that caused the inadvertent deployment of the airbag (1-4).  If it chose not to address the defect, Chrysler should have at least provided an effective warning system to alert and inform owners and/or operators of the hazard and how to avoid (1-6)

The inadvertent airbag deployment warning system should have included permanent and conspicuous warning decals placed within the cabin of the vehicle.  For example, consistent with US Department of Transportation (US DOT) regulations (i.e., Federal Motor Vehicle Safety Standards (FMVSS), Chrysler placed two permanent warning decals (one is related to children and airbags, the other is related to rollovers) on one side of the sun visors in its 2004 Jeep Liberty (7).  Although FMVSS does not allow vehicle manufactures to place additional warnings on the same side of the visor as the airbag and roll over warnings, there are no restrictions from providing additional warnings on the opposite side of the sun visor (7).

Given the hidden and latent hazard associated with inadvertent airbag deployment, Chrysler should have presented the suggested warning decals on the side of the sun visors opposite the required airbag and rollover warnings.  In this manner Chrysler would have ensured the warning decals were present when the Weams purchased the subject vehicle as well as the day of the incident.  For example, photographs of the subject Jeep Liberty taken after the incident depict the FMVSS required child-airbag and roll-over warnings still present and legible on the visors at the time of the incident.

Illustration 1 presents an example on-product warning meeting the ANSI Z535.4-2002 standard that Chrysler should have permanently presented on the visors of its 2004 Jeep Liberty (1,2,5,6).  Chrysler should have also repeated the warning in its manual (1,2).

It would have been reasonable for Chrysler to provide an effective warning system, including a conspicuous, specific, and explicit on-product warning, with the subject Jeep Liberty.  The cost in terms of money, effort, and time to do so would have been minimal and insignificant.

Had an effective warning system been provided, including a conspicuous, explicit, and specific in-vehicle warning, Chrysler would have ensured that owners and operators of the Jeep Liberty were provided with the information they needed to identify the hazard and how to avoid it and Curtis Weams would not have been injured.





Illustration 1.  Exemplar warning label.

**E.      FINDINGS**

Within the bounds of reasonable scientific certainty, and subject to change if additional information becomes available, it is my professional opinion that:

1. The inadvertent deployment of the Jeep's airbag creates a hazard to front seat occupants who are unaware, unprepared, and out of position for the deployment.
2. Given the information Chrysler provided in its manual, it would be reasonable for owners and operators not to expect that the airbag could inadvertently deploy and that there is no problem with the airbag system if the airbag indicator light continues to work properly.
3. Contrary to contemporary safety standards and guidelines, Chrysler failed to provide any warning with the subject Jeep Liberty to alert owners and/or operators that the airbag system can inadvertently deploy. On the contrary, the information and warnings Chrysler provided inform users that they will be alerted to a problem with the airbag.
4. Chrysler's failure to provide an effective warning system deprived owners and operators of the Jeep Liberty, such as Curtis Weams, with the information they needed to identify the hazard and how to avoid it.
5. Chrysler's failure to provide an effective warning system regarding the hazard associated with inadvertent deployment of the airbag was improper, rendered the subject Jeep Liberty defective and unreasonably dangerous, and unsafe for its intended use and caused Curtis Weams injury.
6. Chrysler failure to comply with long known applicable guidelines, practices, and the American National Standards Z535.4 deprived users of the protection afforded to the public by those guidelines and standards.
7. It would have been reasonable for Chrysler to provide an effective warning system, including a conspicuous, specific, and explicit on-product warning, with the subject Jeep



Liberty.  The cost in terms of money, effort, and time to do so would have been minimal and insignificant.
8. Had an effective warning system been provided, including a conspicuous, explicit, and specific in-vehicle warning, Chrysler would have ensured that owners and operators of the Jeep Liberty were provided with the information they needed to identify the hazard and how to avoid it and Curtis Weams would not have been injured.

_____
William J. Vigilante Jr., Ph.D.



**F.      REFERENCES**

1. NSC (2001).  Accident Prevent Manual For Business and Industry: Administration and Programs. Pgs. 112-117,492-497.
2. Laughery and Hammond (1999).  Chapter 1: Overview.  In Warnings and Risk Communication. Pgs. 3-12.
3. Seiden (1984).  Product Safety Engineering for Managers: A Practical Handbook and Guide. Pgs. 1-11.
4. Sanders and McCormick (1993).  Human Factors in Engineering and Design (7th Ed.).  Pgs. 681-687,691.
5. Peters (1984).  A challenger to teh safety profession.  In Professional Safety, October.  Pgs. 46-50.
6. ANSI (2002).  Z535.4: American National Standard for Product Safety Signs and Labels.
7. Foley (2006).  Chapter 43: Regulatory requirements for motor vehicle warnings. In Handbook of Warnings. Pgs. 553-562.



**G.**     **APPENDIX**